**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**PETER RUPP**,

           Plaintiff,

    -against-

**SGT R.B. HOWARD; SGT SHORT; CORRECTION OFFICER RASTANI; CORRECTION OFFICER ATCHER; CORRECTION OFFICER M. KING; CORRECTION OFFICER D. BURGER; CORRECTION OFFICER C. BARNHART; CORRECTION OFFICER W. MORAT; CORRECTION OFFICER J. BARTLETT; CORRECTION OFFICER M. JONES; CORRECTION OFFICER JOHN DOES #1-2**,

           Defendants.

Case No.: 9:24-cv-394 (GTS/ML)

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR A PROTECTIVE ORDER**

Rickner PLLC
14 Wall Street, Suite 1603
New York, New York 10005

On the Brief:

Sara Wolkensdorfer, Esq.

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ..................................................................................................1

**RELEVANT FACTUAL AND PROCEDURAL HISTORY**.......................................................2

**ARGUMENT** ..............................................................................................................................4

    **I.**    **PLAINTIFF'S PROPOSED ORDER SHOULD BE ISSUED**.........................................4

        *a.*   *OSI Reports and Records*................................................................................... 7

        *b.*   *Health and Mental Health Care* ......................................................................... 8

        *c.*   *Personnel Records* .............................................................................................. 9

        *d.*   *Policies, Directives, Training Materials, and Other Documents Related to Facility Operation* ........................................................................................................ 10

**CONCLUSION** ........................................................................................................................11

# TABLE OF AUTHORITIES

**CASES**

*Burks v. Stickney*, 16-CV-0759-FJS-DEP, 2017 WL 1401312, at *5 (N.D.N.Y. Apr. 19, 2017). ...6, 7, 8

*Cox v. McClellan*, 174 F.R.D. 32 (W.D.N.Y. 1997)........................................................................9

*Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66 (S.D.N.Y. 2010). ........................................4

*Ellis v. Navarro*, No. C 07-05126 SBA (LB), 2012 WL 1294205, at *1 (N.D. Cal. Apr. 16, 2012) ...................................................................................................................................................6

*Gillespie v. Charter Communications*, 133 F.Supp.3d 1195 (E.D. Mo 2015)................................5

*Girard v. Blot, et al.*, 20-CV-05883-CS, ECF Doc. 103, filed Jun. 23, 2023 (S.D.N.Y.) ..............11

*Girard v. St. Louis, et al.*, 22-CV-00339-AJB-TWD, ECF Doc. 54, filed Jan. 9, 2024 (N.D.N.Y.) ...................................................................................................................................................11

*Henry v. Hess*, 11-CV-2707, 2012 WL 4856486, at *2 (S.D.N.Y. Oct. 12, 2012) ................8, 9, 11

*Honig v. Doe*, 484 U.S. 305 (1988) ...............................................................................................10

*King v. Conde*, F.R.D. 180 (E.D.N.Y. 1988)...................................................................................4

*Marshall v. New York City Transit Auth.*, 84-CV-1033, 1984 WL 380, at *5 (S.D.N.Y. May 24, 1984) .............................................................................................................................................5

*Mitchell v. Fishbein,* 227 F.R.D. 239 (S.D.N.Y. 2005) ...................................................................5

*Ragland v. Blue Cross Blue Shield of N.D.*, 12–CV–080, 2013 WL 3776495, at *1 (D.N.D. June 25, 2013) .....................................................................................................................................5

*Reese v Liberty*, 18-CV-00421-JDL, 2019 WL 5549219, at *5 (D. Me Oct. 25, 2019)..................7

*Robinson v. The State of New York*, 08-CV-00908, 2010 WL 1930657, at *1 (W.D.N.Y. 2010) ...9

*Russell v. Scott*, 20-CV-184, 2022 WL 3084339, at *6 (D.C.Vt. Aug. 3, 2022).............................9

*Scentsy, Inc. v. B.R. Chase, L.L.C.,* 11–CV–00249, 2012 WL 4523112, at *6 (D. Idaho Oct. 2, 2012) .................................................................................................................................5

*Schiller v. City of New York*, 04-CV-7921, 2007 WL 136149, at *5 (S.D.N.Y. Jan. 19, 2007) .......4

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) ........................................................................4

*Smith v. Goord*, 222 F.R.D 238 (N.D.N.Y. 2004) .......................................................................6, 9

*U.S. v. Sanchez-Gomez*, 138 S.Ct. 1532 (2018) .............................................................................10

*White v. Jindal*, 13-CV-15073, 2015 WL 181670, at *8 (E.D. Mich. Jan. 14, 2015) .....................5

**RULES**

Fed. R. Civ. P. 26 ..........................................................................................................................4, 5

Plaintiff Peter Rupp respectfully submits this Memorandum of Law in Support of his Motion for a Protective Order.

## PRELIMINARY STATEMENT

Plaintiff Peter Rupp commenced this action against the Defendant New York State Department of Corrections and Community Supervision ("DOCCS") corrections officers ("COs"), for injuries he sustained while incarcerated at Mid-State Correctional Facility. In his Complaint, Mr. Rupp claims relief for excessive force, failure to intervene, and deliberate indifference under 42 U.S.C. Section 1983. During the course of discovery, the Defendants requested that the parties enter into the Confidentiality Stipulation and Proposed Protective Order, which permits the blanket designation of six categories of documents as Attorney's Eyes Only: (1) reports and records from the Office of Special Investigations; (2) the health and mental health care of any DOCCS employee, incarcerated individual, or person subjected to supervision by DOCCS; (3) DOCCS personnel records; (4) DOCCS policies and directives; (5) DOCCS training materials, and; (6) records, photographs, videos, maps and diagrams. Plaintiff voiced his objection to the Attorney's Eyes Only designation and in response, the Defendants indicated that the designation was DOCCS's policy—they were unwilling to modify it, narrow it, or even meet and confer to discuss what specific documents might be covered.

Plaintiff now moves to request that this Court issue his Proposed Protective Order, attached as Exhibit A, because it adequately protects the documents that will be exchanged in this action. Plaintiff suspects that in opposition, the Defendants will claim that they need an Attorney's Eyes Only provision. This should be for two reasons: *First*, Defendants have not demonstrated good cause for an AEO designation, as they have failed to articulate specific allegations of harm, and; *Second*, there are no security concerns here, as Plaintiff is no longer incarcerated.

1

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

Plaintiff brought the instant action against the Defendants for injuries he sustained on October 12, 2021 and April 19, 2022 while incarcerated at Mid-State Correctional Facility. In his Complaint, Plaintiff claims relief for excessive force, failure to intervene, and deliberate indifference under 42 U.S.C. Section 1983.

In mid-January 2025, as part of ongoing discovery, Defendants sent Plaintiff's counsel a Confidentiality Stipulation and Proposed Protective Order ("Defendants' Proposed Order"). Wolkensdorfer Aff. ¶7; Ex. B. In relevant part, the Defendants' Proposed Order states the following:

> 5. Defendants may further designate as "Attorney's Eyes Only" any Confidential Material in the following categories:
>
> a.    Reports and other records prepared by the DOCCS Office of Special Investigations, or its predecessor entity the DOCCS Office of the Inspector General, in connection with an investigation conducted by that entity;
>
> b.    Health care (including, but not limited to, drug or substance abuse records), mental health care, and labor relations records that contain PII concerning any employee of DOCCS, any incarcerated individual in the custody of DOCCS, or any person subject to community supervision by DOCCS, provided that, for mental health records, the review and determination required by New York Mental Health Law § 33.16 has been completed before any records approved for release are produced, and provided that, for any records that constitute law enforcement disciplinary records as defined in NYS Public Officers Law ("POL") § 86, such records shall be redacted consistent with obligations under POL §§ 89 and 96;
>
> c.    Personnel records or other documents pertaining to the individual's employment, including, but not limited to, records of disciplinary proceedings, performance evaluations, and counseling, which would not otherwise be subject to a public right of access under the Freedom of Information Law ("FOIL"), Article 6 (Sections 84-90). Further, provided that, for any records that constitute law enforcement disciplinary records as defined in POL § 86, such records shall be redacted consistent with obligations under POL §§ 89 and 96;

  d. Directives or written policies issued by DOCCS or any correctional facility operated by DOCCS that are not publicly available and are classified as "D" within the meaning of DOCCS Directive 0001, indicating that they contain information affecting the safety and security of correctional facilities and are handled as confidential material and restricted from unauthorized access;

  e. DOCCS training materials that are not publicly available and refer to or concern correctional, community supervision or institutional safety, security, or good order;

  f. Any other records, photographs, videos, maps, diagrams or materials that Defendants believe would compromise the safety or security of a DOCCS facility or office if disclosed to an incarcerated individual in the custody of DOCCS and/or the general public.

Ex. B, ¶ 5. After reviewing, Plaintiff's counsel sent suggested edits to defense counsel via email and indicated that Plaintiff disagreed with the blanket designation of categories of documents as Attorney's Eyes Only ("AEO"). Wolkensdorfer Aff. ¶8. In that same email, Plaintiff's counsel suggested a meet and confer regarding the designation to discuss what might be covered, and the justification for withholding this discovery from Plaintiff himself. Defense counsel replied, stating that the portion of Defendants' Proposed Order regarding AEO designation was DOCCS policy. *Id.* at ¶9. The Defendants declined our request to meet and confer.

  Plaintiff's counsel wrote back, explaining that she could not agree to a blanket AEO designation where Plaintiff is no longer incarcerated. Wolkensdorfer Aff. ¶10. She further explained that although it is understandable for DOCCS to designate certain sets of documents as AEO where a plaintiff is currently incarcerated, as it could pose a security risk, that same concern does not exist here. Plaintiff's counsel proposed that DOCCS's concerns could easily be addressed by marking documents as confidential material. *Id.*

  Plaintiff's counsel further indicated that Plaintiff would consider having specific documents marked as AEO, if Defendants had any in mind, and would be willing to address in a

3

separate order why said documents are an exception. *Id.* at ¶11. Defense counsel stated that she would check with DOCCS regarding Plaintiff's suggestions. *Id.*

In early March 2025, defense counsel informed Plaintiff's counsel that DOCCS was not willing to modify the Proposed Order with respect to the AEO designation. *Id.* at ¶12. The parties met and conferred on March 11, 2025, regarding Defendants' Proposed Order and again, defense counsel indicated that the Order follows DOCCS policy, and they are not willing to modify it, say what specific documents would be covered by it, or explain the specific justifications for marking these documents AEO. *Id.* at ¶13.

On March 13, 2025, Plaintiff's counsel requested, *inter alia*, a pre-motion court conference pursuant to Local Rule 37.1(c). ECF No. 68. A copy of Plaintiff's Confidentiality Stipulation and Proposed Protective Order was attached therein. Exh. A. On March 14, 2025, the Court granted Plaintiff leave to file the instant motion. ECF No. 69.

## ARGUMENT

### I. PLAINTIFF'S PROPOSED ORDER SHOULD BE ISSUED

Rule 26(c) of the Federal Rules of Civil Procedure gives the district court broad discretion to authorize the issuance of protective orders and "to decide […] what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Before a protective order is issued, the party seeking a protective order "bears the burden of establishing that good cause for the order exists," *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 71 (S.D.N.Y. 2010). Good cause is established by demonstrating that "disclosure will result in a clearly defined, specific and serious injury. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Schiller v. City of New York*, 04-CV-7921, 2007 WL 136149, at *5 (S.D.N.Y. Jan. 19, 2007) (internal quotations omitted); *see also King v. Conde*, F.R.D. 180, 189 (E.D.N.Y. 1988) ("The party seeking to invoke the privilege bears the burden of

4

justifying its application."). Though the movant must establish good cause, "the court ultimately weighs the interests of both sides in fashioning an order." *Mitchell v. Fishbein,* 227 F.R.D. 239, 245 (S.D.N.Y. 2005).

A party seeking to include an AEO designation in a protective order will have a higher burden of establishing good cause, as such a designation is a "drastic remedy" that "should be reserved for only those rare instances in which it is truly justified … and there is no other effective alternative." *See Gillespie v. Charter Communications*, 133 F.Supp.3d 1195, 1201-02 (E.D. Mo 2015); *see also Ragland v. Blue Cross Blue Shield of N.D.*, No. 12–CV–080, 2013 WL 3776495, at *1 (D.N.D. June 25, 2013) (generally, an "attorneys' eyes only" designation is appropriate only in very limited situations, like cases involving trade secrets); *see also Scentsy, Inc. v. B.R. Chase, L.L.C.,* No. 11–CV–00249, 2012 WL 4523112, at *6 (D. Idaho Oct. 2, 2012) (noting that the standard to prove that an "attorneys' eyes only" designation is necessary is "high," and that "very few documents need [this] designation"). This aversion towards an AEO designation reflects the intentionally broad scope of discovery in a federal action. Fed. R. Civ. P. 26(b)(1); *see Marshall v. New York City Transit Auth.*, 84-CV-1033, 1984 WL 380, at *5 (S.D.N.Y. May 24, 1984) ("[T]he policy of full disclosure is especially compelling in a case … where the plaintiff is alleging violation of his constitutional rights and seeking relief under the Civil Rights Act.").

Such a "drastic remedy" has been permitted where a plaintiff is incarcerated, as it provides a means of balancing a prison's security concerns against an incarcerated individual's right to access relevant discovery. *See White v. Jindal*, 13-CV-15073, 2015 WL 181670, at *8 (E.D. Mich. Jan. 14, 2015) (granting *pro se* inmate's motion to appoint counsel when his "discovery requests related to other inmates' disciplinary records raise[d] a delicate issue that pit[ted] security concerns against [his] right to discoverable information" and directing that those materials be produced as

AEO); *see also Ellis v. Navarro*, No. C 07-05126 SBA (LB), 2012 WL 1294205, at *1-2 (N.D. Cal. Apr. 16, 2012) (overruling agency's objection to the production of highly sensitive jail-investigation records and holding that release of summary reports of those records as AEO adequately addressed safety and security concerns). Similarly, courts have permitted AEO designations of personally identifiable information—addresses, social security numbers, names of family members, and medical and insurance information—in civil rights actions brought by incarcerated individuals against correction officers, as these officers, "possess legitimate privacy interests which militate against indiscriminate disclosure of inherently personal information concerning those employees and their families." *Smith v. Goord*, 222 F.R.D 238 (N.D.N.Y. 2004).

However, not all institutional safety and/or privacy concerns warrant an AEO designation. In *Burks v. Stickney*, this Court held that DOCCS failed to demonstrate good cause for restricting portions of an Office of Special Investigations ("OSI") file from public disclosure. 16-CV-0759-FJS-DEP, 2017 WL 1401312, at *5 (N.D.N.Y. Apr. 19, 2017). As part of discovery, the OSI file was disclosed to plaintiff's counsel under a protective order that "permit[ted] plaintiff to review the materials disclosures," but did not allow the incarcerated plaintiff to have a copy of the documents. *Id.* at *1. The plaintiff moved to de-classify portions of the OSI file,[1] and the defendants, in opposition, argued that doing so would "jeopardize[] the safety of ... third parties who were interviewed on a confidential basis, [ … would] reveal[] how OSI conducts witness interviews and how information is assessed by investigators for credibility and potential motives[, …]" and could compromise future investigations "if sufficient measures are not taken to protect the confidentiality of witnesses." *Burks*, 2017 WL 1401312, at *4. After an *in camera* review of

---

[1] The plaintiff moved to de-classify the "Final OSI report", "Inmate witness statements", "Plaintiff's statement to OSI", and a transcript of question and answer proceedings involving one of the defendants. *Burks*, 2017 WL 1401312, at *2.

6

the materials at issue, Judge Peebles held that the defendants had not demonstrated good cause for restricting them from public disclosure—specifically, he reasoned that the OSI report did not "disclose investigatory methodologies that risk the efficacy and security of future DOCCS and OSI investigations," that it did not contain any information about the underlying investigations that was not already public knowledge or previously disclosed, and that any documents disclosing the identities of non-party individuals could be redacted. *Id.* at *4-*5. As such, the plaintiff's motion was granted, except that plaintiff, who was incarcerated, was not permitted to possess a personal copy of the OSI file. *Id.* at *5.

Here, Defendants' only justification for maintaining the ability to designate six sweeping categories of documents as AEO is that it is "DOCCS policy," which fails to provide any specificity regarding potential injuries and/or safety and privacy concerns. Most importantly, Plaintiff is no longer in DOCCS custody. It is unclear how production of the materials at issue as confidential, rather than AEO, "could be used to thwart corrections officers' efforts to maintain security[,] […] pose a risk to officer safety[, and/or] […] if released to even one prisoner, could spread throughout the [p]rison." *Reese v Liberty*, No. 18-CV-00421-JDL, 2019 WL 5549219, at *5 (D. Me Oct. 25, 2019). For the reasons detailed below, this Court should find that Defendants have failed to establish good cause for an AEO designation and grant Plaintiff's Proposed Order

### a. OSI Reports and Records

To be clear, OSI files related to Plaintiff's case implicate *his* privacy interests, and any attempt to limit his access is nonsensical, especially where he has signed an authorization for the release of said information. Additionally, it is clear from *Burks* that there are undoubtedly portions of the OSI files related to Plaintiff's case that pose no specific safety and security risks. 2017 WL 1401312, at *5. Even if there were such risks, they would be significantly minimized or eliminated, as Plaintiff is no longer incarcerated. To the extent a non-party's privacy is at issue, redaction of

personal identifying information ("PII") should be sufficient to allay any chilling effect disclosure may have on future investigations. *Id.* at *4.

Plaintiff's counsel also notes that she has received redacted OSI files from the Attorney General's Office in other cases involving DOCCS and/or DOCCS personnel—in at least one of those cases, there was no protective order. Plaintiff's counsel has also received redacted OSI files through Freedom of Information Law ("FOIL") requests. It is unclear how entering into a protective order where OSI files are marked as confidential would be insufficient to protect DOCCS's security and privacy interests.

### b. Health and Mental Health Care

Subsection 5(b) of Defendants' Proposed Order gives them the ability to mark as AEO, *inter alia*, health care, mental health care, and labor relations for "any employee of DOCCS, any incarcerated individual in the custody of DOCCS, or any person subject to community supervision by DOCCS." This subsection is not only overbroad but seemingly includes Plaintiff's own health and mental health care records, which he can easily obtain with a signed authorization. Additionally, New York State Public Officers Law ("POL") Sections 86, 89, and 96 largely deal with limiting and/or excluding PII in documents provided pursuant to FOIL. While Plaintiff has no issue with the redaction of PII from any of Defendants' health and mental health care records it may demand in discovery—if the Defendants put their mental health care at issue in this litigation, which seems exceedingly unlikely—there is no valid or logical reason for Plaintiff to agree to mark as AEO records of mental health care that are only relevant if the Defendants themselves make it part of their defense. Indeed, courts have also permitted the disclosure of psychological fitness evaluations as confidential material where "the records would be reasonably calculated to lead to the discovery of admissible evidence under the liberal standards of federal discovery." *See Henry v. Hess*, 11-CV-2707, 2012 WL 4856486, at *2 (S.D.N.Y. Oct. 12, 2012)

8

(internal citations omitted). As such, Plaintiff should be permitted to review such records, particularly his own.

### c. Personnel Records

Courts have routinely granted plaintiff's access to personnel records and documents related to officer (police and corrections) misconduct, especially where it is highly relevant to the allegations within a complaint. *See Russell v. Scott*, 20-CV-184, 2022 WL 3084339, at *6 (D.C.Vt. Aug. 3, 2022) (holding that documents related to any complaints against and/or PREA investigations into the defendant corrections officer were relevant to the plaintiff's allegation of sexual assault). Most importantly, courts often do not impose AEO restrictions on such documents, and sometimes impose no confidentiality restrictions—as previously cited, the court in *Henry* held that the plaintiff estate of an individual who had died after being shot by the defendant officer was entitled to the officer's employment application and related documents, all training and course completion documents, and all psychological fitness evaluations, to be marked as confidential material, only, 2012 WL 4856486, at *1; in *Cox v. McClellan*, an excessive force case against two correction officers, the court granted the plaintiff's motion to compel, *inter alia*, "all documents regarding [one of the defendant's] arrest for assault" and denied the defendant's motion for a confidentiality order, 174 F.R.D. 32, 33 (W.D.N.Y. 1997); and in *Robinson v. The State of New York*, a former DOCCS employee was permitted to obtain personnel files of the defendants under a confidentiality over that allowed the plaintiff to review the materials, 08-CV-00908, 2010 WL 1930657, at *1 (W.D.N.Y. 2010).

Additionally, as New York Civil Rights Law Section 50-a has been repealed, personnel records are no longer statutorily exempt from disclosure. Federal courts, thus, have less to consider when balancing "legitimate local interests" in protecting the privacy rights of state employees against the liberal federal discovery standard. *Cf. Smith*, 222 F.R.D at 241 (limiting access to

personnel, training, and performance records of the defendants to plaintiff's attorney after consideration of the privacy rights recognized under Section 50-a).

Here, Plaintiff alleges excessive force, failure to intervene, and deliberate indifference by the defendant correction officers—these materials are highly relevant to Plaintiff's ability to prove his case and Defendants have failed to establish good cause. These documents should be accessible to him and his Proposed Order should be granted.

### d. Policies, Directives, Training Materials, and Other Documents Related to Facility Operation

Finally, Defendants rely on general security risks that a formerly incarcerated individual may give currently incarcerated individuals access to institutional secrets without demonstrating why providing policies, directives, and training materials to Plaintiff himself pose a particularized risk. Additionally, the only materials relevant under this subsection would be from the dates of the incidents, which were in 2021 and 2022, and DOCCS has not demonstrated why outdated policies, directives, and/or training materials would pose a security risk. Furthermore, limiting Plaintiff's access to discovery because he was previously in DOCCS' custody or because he may recidivate is discriminatory and against precedent. *See U.S. v. Sanchez-Gomez*, 138 S.Ct. 1532 (2018); *see also Honig v. Doe*, 484 U.S. 305, 320 (1988) ('[W]e generally have been unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury'). These materials will still be marked confidential, and there is no reason to believe that Plaintiff will violate the confidentiality order by, for some inexplicable reason, disclosing them to someone who is not involved in this litigation. This Court, and the Defendants, should not presume otherwise.

Plaintiff is not unsympathetic to institutional security and the need to limit access to certain materials, but there is no cognizable risk posed by Plaintiff himself to justify the overbreadth of

AEO designations proposed by Defendants here. *See* Wolkensdorfer Aff. ¶10; *see also Henry*, 2012 WL 4856486, at *1. As with other categories of documents discussed above, training materials and confidential directives—in one case, directives related to controlling gang activity within DOCCS's facilities—have been provided to Plaintiff's counsel without a confidentiality order. Absent good cause, Plaintiff should have access to these documents.

For all of the reasons stated herein, Plaintiff's Proposed Order should be granted.

## II.  IN THE ALTERNATIVE, ANY AEO DESIGNATIONS SHOULD BE SEVERELY LIMITED

If the Court determines that the Defendants should be entitled to make AEO designations within the protective order, Plaintiff respectfully requests, for all the reasons stated above, that they be ordered to limit the breadth of documents covered within their Proposed Order. *See* Exh. B. Plaintiff's counsel has entered into protective orders with the Attorney General's Office/DOCCS that limit AEO designations, with specificity and justifications provided, and there is no reason to believe the same cannot be done here. *See Girard v. Blot, et al.*, 20-CV-05883-CS, ECF Doc. 103, filed Jun. 23, 2023 (S.D.N.Y.); *see also Girard v. St. Louis, et al.*, 22-CV-00339-AJB-TWD, ECF Doc. 54, filed Jan. 9, 2024 (N.D.N.Y.).

## CONCLUSION

For the reasons stated above, Plaintiff's Proposed Order should be granted.

Dated: New York, New York
       March 21, 2025

Rickner PLLC

By: /s/ Sara Wolkensdorfer
    Sara Wolkensdorfer

14 Wall Street Suite 1603
New York, New York 10005
Phone: (212) 300-6506
Fax: (888) 390-5401
*Attorneys for Plaintiff*

12