# EXHIBIT B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

**PETER RUPP**,

          Plaintiff,

      -against-

**ASAT M. J. YOUNIS; SGT R.B.
HOWARD; SGT SHORT; CORRECTION
OFFICER RASTANI; CORRECTION
OFFICER ATCHER; CORRECTION
OFFICER JOHN DOES #1-10,**

          Defendants.

Case No.: 9:24-cv-394 (GTS/ML)

**FIRST AMENDED
COMPLAINT**

Plaintiff PETER RUPP, by his attorneys, Rickner PLLC, complaining of the Defendants, alleges, upon information and belief and personal knowledge:

## NATURE OF THE CASE

1.     Plaintiff PETER RUPP ("Plaintiff" or "Mr. Rupp") brings this action for compensatory and punitive damages pursuant to 42 U.S.C. § 1983 for violations of his federal and state constitutional rights while in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Mid-State Correctional Facility.

## JURISDICTION

2.     This action is brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's rights under the Eighth Amendment to the Constitution of the United States, Article 1 of the Constitution of the State of New York, and the common laws of the State and New York.

3.     An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

## VENUE

4.      Venue is properly laid in the District Court for the Northern District of New York, because the Plaintiff's claims arose in Oneida County.

## JURY DEMAND

5.      Plaintiff hereby demands a trial by jury.

## PARTIES

6.      Plaintiff was at all times relevant to this action a resident of Oneida County and is currently a resident of Saratoga County in the State of New York.

7.      Asat M.K. Younis (hereinafter "Defendant Younis") was at all relevant times described herein an employee at Mid-State Correctional Facility, employed by DOCCS. At all relevant times described herein she was acting under color of New York state law and acting in the course and scope of the duties attendant to that employment. She is sued in an individual capacity.

8.      Sgt R.B. Howard (hereinafter "Defendant Howard") was at all relevant times described herein an employee at Mid-State Correctional Facility, employed by DOCCS. At all relevant times described herein he was acting under color of New York state law and acting in the course and scope of the duties attendant to that employment. He is sued in an individual capacity.

9.      Sgt Short (hereinafter "Defendant Short") was at all relevant times described herein an employee at Mid-State Correctional Facility, employed by DOCCS. At all relevant times described herein he was acting under color of New York state law and acting in the course and scope of the duties attendant to that employment. He is sued in an individual capacity.

10.     Correction Officer Mark Rastani (hereinafter "Defendant Rastani") was at all relevant times described herein an employee at Mid-State Correctional Facility, employed by

DOCCS. At all relevant times described herein he was acting under color of New York state law and acting in the course and scope of the duties attendant to that employment. He is sued in an individual capacity.

11. Correction Officer Matthew Atcher (hereinafter "Defendant Atcher") was at all relevant times described herein an employee at Mid-State Correctional Facility, employed by DOCCS. At all relevant times described herein he was acting under color of New York state law and acting in the course and scope of the duties attendant to that employment. He is sued in an individual capacity.

12. Correction Officer John Does #1-10 (hereinafter "Defendant Does") were at all relevant times described herein employees at Mid-State Correctional Facility, employed by DOCCS. The Defendant Does were the individuals who assaulted Plaintiff on or around October 12, 2021. At all relevant times described herein, the Defendant Does were acting under color of New York state law and acting in the course and scope of the duties attendant to their employment. Each Defendant Doe is sued in an individual capacity. The true names of the Defendant Does are not currently known to Plaintiff. However, each is an employee or agent of DOCCS.

**THE VIOLATION OF PLAINTIFF'S CIVIL RIGHTS**

a. <u>October 12, 2021 Incident</u>

13. On October 12, 2021, at approximately 4:00 p.m., after Mr. Rupp was wrongly evicted from the Veterans Honor Dorm at Mid-State Correctional Facility by Defendant Younis, a civilian DOCCS employee.

14. When Mr. Rupp approached Defendant Younis to ask why he was being kicked out of the dorm, she screamed at him and threatened him using her personal relationship with a Correction

Officer ("CO") as leverage. At the time of this incident, it was believed that Defendant Younis was in a romantic relationship with one of the COs at the facility.

15. Defendant Younis proceeded to write a false ticket against Mr. Rupp for the interaction.

16. About one hour later around 4:00 p.m., Defendant Howard and Defendant Does 1-5 came to Mr. Rupp's dorm, pat frisked him, and lodged verbal threats against him regarding his prior interaction with Defendant Younis.

17. When Mr. Rupp warned the officers that he has a heart condition and pacemaker, one of the COs made a comment about seeing "how bad" Mr. Rupp's heart was and began punching him with a closed fist in the left side of his chest, back, and sides of his head. Mr. Rupp's head was also slammed into the wall, causing his glasses to break, and further injuring his head.

18. After the assault, Mr. Rupp began vomiting uncontrollably and reported a severe headache, along with significant pain to his chest and legs.

19. Defendant Howard and Defendant Does 1-5, however, ignored Mr. Rupp's injuries and further battered him while transporting him to the Special Housing Unit ("SHU").

20. Once at SHU, Defendant Short and Defendant Does 6-10 beat Mr. Rupp and failed to afford him any medical care whatsoever for at least two days after these three assaults.

21. When the nurse saw the extent of Mr. Rupp's injuries, she called the facility doctor immediately, commenting that it looked like he had been "hit by a truck." Mr. Rupp was subsequently transported to St. Elizabeth's Hospital for evaluation.

22. Upon return to the facility, Mr. Rupp's requests for photos of his injuries were repeatedly ignored. It was not until October 20, 2021—over one week after the assault—that DOCCS finally took photographs of the bruising and injuries to Mr. Rupp's person.

23. After the assault, Mr. Rupp was ticketed a *second* time for the interaction with Defendant Younis, this time by Defendant Howard, who reported that he received a call informing him that Mr. Rupp was "aggressive with a female civilian."

24. Mr. Rupp was wrongly charged and falsely punished in the SHU based on these two improper disciplinary tickets.

b. April 19, 2022 Incident

25. On April 19, 2022, at approximately 11:00 a.m. and shortly thereafter, Mr. Rupp was assaulted twice by a group of incarcerated individuals within Building 4, Dorm G of Mid-State Correctional.

26. Several hours prior to his assault, Defendants Rastani and Atcher came to the housing unit and starting yelling at Mr. Rupp. Defendants Rastani and Atcher claimed that Mr. Rupp was a "rat" for reporting staff misconduct, referencing an October 2021 incident where Mr. Rupp was assaulted by the Defendant Does.

27. Defendants Rastani and Atcher forced Mr. Rupp into a pat and frisk position and continued to threaten him. One stated that he would "fuck him up worse than the last one" and another said stated, "I'm not going to fuck you up, I'm going to let THEM do it!" pointing at the entire dorm of incarcerated individuals who were watching and listening.

28. Defendants Rastani and Atcher finally let Mr. Rupp go and he went to his morning program at 8:00 a.m.

29. When Mr. Rupp returned to the housing unit from his morning program a little after 11:00 a.m., he was assaulted twice by known gang members in the unit for being a "rat."

30. Mr. Rupp was forced by the other incarcerated individuals to pack his belongings and leave the housing unit; he was eventually transferred to Building 2.

31.     Prior to being transferred, Mr. Rupp visited the Building 4 sergeant's office to ask to be taken to medical, but was denied.

32.     When Mr. Rupp arrived at Building 2, Dorm F, he asked a female CO if he could be taken to medical, and she refused to take him.

33.     Mr. Rupp, who was beginning to experience chest pains, became concerned that something was wrong with his pacemaker and called a family member on the outside to see if she could call the facility for him. Mr. Rupp also put in a sick call request.

34.     He continued to ask various DOCCS staff in the housing unit to take him to medical, but was denied until approximately two days later, when he was finally taken to medical.

35.     When he was finally brought to medical, they immediately saw his injuries and transported him to St. Elizabeth's Hospital, where he was admitted for a Non-ST-Elevation Myocardial Infarction (NSTEMI), a type of heart attack.

36.     Upon his return to Mid-State Correctional on April 25, 2022, Mr. Rupp was served with a false ticket in relation to this incident.

## THE INJURIES TO PLAINTIFF

37.     This action seeks damages on behalf of Plaintiff for the extraordinary emotional pain and suffering and injuries to his person, that he was forced to endure as a consequence of the Defendants' decidedly wrongful actions.

38.     The Defendants' actions were wanton, reckless, and malicious, as well as in blatant disregard of Plaintiff's civil rights, and as such the Defendants are liable for punitive damages.

39.     All of the causes of action pleaded herein fall within one or more of the exceptions set forth in New York's Civil Practice Law & Rules 1602 with respect to joint and several liability.

## FIRST CLAIM FOR RELIEF:
## EXCESSIVE FORCE UNDER 42 U.S.C. § 1983
## AGAINST DEFENDANTS

40. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

41. Defendants Rastani and Atcher and Defendant Does used physical force against Plaintiff.

42. Plaintiff's seizure and detention at the hands of Defendants was made in the absence of probable cause. The unwanted physical contact was therefore unlawful and unconstitutional.

43. Even assuming arguendo that Plaintiff's arrest was lawful, Defendants engaged in the use of force that was excessive, malicious, gratuitous, and with the intention of inflicting physical and emotional harm to plaintiff.

44. That by virtue of the aforementioned acts by Defendants, Plaintiff was deprived civil rights guaranteed under the Fourth Amendment to the United States Constitution to be free from unreasonable or unlawful searches and seizures, and Defendants therefore are liable to Plaintiff for damages under 42 U.S.C. § 1983.

45. As a result of the above unconstitutional conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries.

46. As a result of the above unconstitutional conduct, Defendants are liable for punitive damages.

## SECOND CLAIM FOR RELIEF:
## FAILURE TO INTERVENE AND CONSPIRACY UNDER 42 U.S.C. § 1983
## AGAINST DEFENDANTS

47. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

48. Defendants failed to intervene to prevent, end or report the unlawful and unconstitutional conduct to which Plaintiff was subjected despite the fact that they had opportunities to do so.

49. Defendants thereby displayed deliberate indifference to Plaintiff's rights, including Plaintiffs right to be free from unreasonable and unlawful searches and seizures.

50. Defendants also agreed among themselves and with other individuals to act in concert and thus conspired to deprive Plaintiff of clearly established civil rights.

51. That by virtue of the aforementioned acts by Defendants, Plaintiff was deprived of civil rights guaranteed under the Constitution of the United States, and Defendants therefore are liable to Plaintiff for damages under 42 USC § 1983.

52. As a result of the above unconstitutional conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries.

53. As a result of the above unconstitutional conduct, Defendants are liable for punitive damages.

**THIRD CLAIM FOR RELIEF:**
**DELIBERATE INDIFFERENCE UNDER**
**42 U.S.C. § 1983 AGAINST DEFENDANTS**

54. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

55. By reason of the foregoing, and by behaving with deliberate indifference to circumstances presenting a substantial risk of serious harm, Defendants deprived Plaintiff of the rights, remedies, privileges, and immunities guaranteed to every citizen of the United States,

secured by 42 U.S.C Section 1983, including, but not limited to, rights guaranteed by the Eighth Amendment of the United States Constitution.

56. Defendants had actual knowledge of, but disregarded, an excessive risk to Plaintiff's safety. But for Defendants' willful and deliberate indifference to the danger posed on his life, Plaintiff would not have been attacked or experienced the other physical and psychological injuries he still has today.

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all of the Defendants:

a. Compensatory damages;

b. Punitive damages;

c. The convening and empaneling of a jury to consider the merits of the claims herein;

d. Costs and interest and attorney's fees;

e. Such other and further relief as this court may deem appropriate and equitable.

Dated: New York, New York
     May 15, 2024

Rickner PLLC

By:     /s/

     Sara Wolkensdorfer

14 Wall Street, Suite 1603
New York, New York 10005
Phone: (212) 300-6506
Fax: (888) 390-5401
*Attorney for Plaintiff*