# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

PETER RUPP,

        Plaintiff,

        -against-

SGT R.B. HOWARD; SGT SHORT;
CORRECTION OFFICER RASTANI;
CORRECTION OFFICER ATCHER;
CORRECTION OFFICER M. KING;
CORRECTION OFFICER D. BURGER;
CORRECTION OFFICER C.
BARNHART; CORRECTION OFFICER
W. MORAT; CORRECTION OFFICER J.
BARTLETT; CORRECTION OFFICER
M. JONES; CORRECTION OFFICER
JOHN DOES #1-2,

        Defendants.

Case No.: 9:24-cv-394 (GTS/ML)

**PROPOSED**
**THIRD AMENDED**
**COMPLAINT**

Plaintiff PETER RUPP, by his attorneys, Rickner PLLC, complaining of the Defendants, alleges, upon information and belief and personal knowledge:

**NATURE OF THE CASE**

1.    Plaintiff PETER RUPP ("Plaintiff" or "Mr. Rupp") brings this action for compensatory and punitive damages pursuant to 42 U.S.C. § 1983 for violations of his federal and state constitutional rights while in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Mid-State Correctional Facility.

**JURISDICTION**

2.    This action is brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's rights under the Eighth Amendment to the Constitution of the United States, Article 1 of the Constitution of the State of New York, and the common laws of the State and New York.

3.    An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

## VENUE

4.      Venue is properly laid in the District Court for the Northern District of New York, because the Plaintiff's claims arose in Oneida County.

## JURY DEMAND

5.      Plaintiff hereby demands a trial by jury.

## PARTIES

6.      Plaintiff was at all times relevant to this action a resident of Oneida County and is currently a resident of Saratoga County in the State of New York.

7.      Sgt R.B. Howard (hereinafter "Defendant Howard") was at all relevant times described herein an employee at Mid-State Correctional Facility, employed by DOCCS. At all relevant times described herein he was acting under color of New York state law and acting in the course and scope of the duties attendant to that employment. He is sued in an individual capacity.

8.      Sgt Short (hereinafter "Defendant Short") was at all relevant times described herein an employee at Mid-State Correctional Facility, employed by DOCCS. At all relevant times described herein he was acting under color of New York state law and acting in the course and scope of the duties attendant to that employment. He is sued in an individual capacity.

9.      Correction Officer Mark Rastani (hereinafter "Defendant Rastani") was at all relevant times described herein an employee at Mid-State Correctional Facility, employed by DOCCS. At all relevant times described herein he was acting under color of New York state law and acting in the course and scope of the duties attendant to that employment. He is sued in an individual capacity.

10.     Correction Officer Matthew Atcher (hereinafter "Defendant Atcher") was at all relevant times described herein an employee at Mid-State Correctional Facility, employed by

DOCCS. At all relevant times described herein he was acting under color of New York state law and acting in the course and scope of the duties attendant to that employment. He is sued in an individual capacity.

11. Correction Officer M. King (hereinafter "Defendant King") was at all relevant times described herein an employee at Mid-State Correctional Facility, employed by DOCCS. At all relevant times described herein he was acting under color of New York state law and acting in the course and scope of the duties attendant to that employment. He is sued in an individual capacity.

12. Correction Officer D. Burger (hereinafter "Defendant Burger") was at all relevant times described herein an employee at Mid-State Correctional Facility, employed by DOCCS. At all relevant times described herein he was acting under color of New York state law and acting in the course and scope of the duties attendant to that employment. He is sued in an individual capacity.

13. Correction Officer C. Barnhart (hereinafter "Defendant Barnhart") was at all relevant times described herein an employee at Mid-State Correctional Facility, employed by DOCCS. At all relevant times described herein he was acting under color of New York state law and acting in the course and scope of the duties attendant to that employment. He is sued in an individual capacity.

14. Correction Officer J. Bartlett (hereinafter "Defendant Bartlett") was at all relevant times described herein an employee at Mid-State Correctional Facility, employed by DOCCS. At all relevant times described herein he was acting under color of New York state law and acting in the course and scope of the duties attendant to that employment. He is sued in an individual capacity.

15. Correction Officer W. Morat (hereinafter "Defendant Morat") was at all relevant times described herein an employee at Mid-State Correctional Facility, employed by DOCCS. At all relevant times described herein he was acting under color of New York state law and acting in the course and scope of the duties attendant to that employment. He is sued in an individual capacity.

16. Correction Officer M. Jones (hereinafter "Defendant Jones") was at all relevant times described herein an employee at Mid-State Correctional Facility, employed by DOCCS. At all relevant times described herein he was acting under color of New York state law and acting in the course and scope of the duties attendant to that employment. He is sued in an individual capacity.

17. Correction Officer John Does #1-2 (hereinafter "Defendant Does") were at all relevant times described herein employees at Mid-State Correctional Facility, employed by DOCCS. The Defendant Does were the individuals who assaulted Plaintiff on or around October 12, 2021. At all relevant times described herein, the Defendant Does were acting under color of New York state law and acting in the course and scope of the duties attendant to their employment. Each Defendant Doe is sued in an individual capacity. Defendant Doe 1 is a Caucasian male with a short stubbly beard and acne scars on his face. Defendant Doe 2 is a Caucasian male weighing over 230 pounds and is approximately six-foot three inches. The true names of the Defendant Does are not currently known to Plaintiff, however, each is an employee or agent of DOCCS.

## THE VIOLATION OF PLAINTIFF'S CIVIL RIGHTS

a. October 12, 2021 Incident

18. On October 12, 2021, at approximately 4:00 p.m., after Mr. Rupp was wrongly evicted from the Veterans Honor Dorm at Mid-State Correctional Facility by Ms. Younis, a civilian DOCCS employee.

19. When Mr. Rupp approached Ms. Younis to ask why he was being kicked out of the dorm, she screamed at him and threatened him using her personal relationship with a Correction Officer ("CO") as leverage. At the time of this incident, it was believed that Ms. Younis was in a romantic relationship with one of the COs at the facility.

20. About one hour later around 4:00 p.m., Plaintiff was watching TV in his dorm when Defendant Howard walked in, left the dorm door open, and asked the CO in charge of the dorm to identify Mr. Rupp. On the other side of the open dorm door were Defendants King, Burger, and Does 1-2, all wearing gloves.

21. After the CO in charge of the dorm pointed at Plaintiff, Defendant Howard walked up to Mr. Rupp, asked him for his ID, which Mr. Rupp gave him, and then instructed him to move into the hallway. Mr. Rupp did so, and Defendant Howard shut and locked the door behind them.

22. Defendants King, Burger, and Does 1-2 then put Mr. Rupp on the wall in a pat-frisk position and checked his pockets. While this was happening, Mr. Rupp told the officers that he has a heart condition and pacemaker, to which Defendant Doe 1, who was standing on Mr. Rupp's left side, made a comment about seeing "how bad" Mr. Rupp's heart was, and Defendants King, Burger, and Does 1-2 began punching and kicking him all over his body – punching him in the head, ribs, hips, chest, and back, and punching and kicking him in the legs.

23. The assault lasted approximately 15 minutes – in between bouts of punching and/or kicking, Defendant Doe 1 would scream in Plaintiff's left ear about things like how he "fucked with the wrong woman", meaning Ms. Younis, and how he "hated women", before Defendants King, Burger, and Does 1-2 would begin punching and/or kicking Plaintiff again.

24. About halfway through the assault, Defendant Doe 1 spit in Mr. Rupp's face.

25. Defendant Doe 1 also repeatedly punched Mr. Rupp with a closed fist on the left side of his face, causing Mr. Rupp's glasses to break and fall off his face and onto the ground.

26. During the assault, one of Defendants King, Burger, and Does 1-2, who was standing and assaulting Mr. Rupp from behind, slammed his head into the wall.

27. Defendant Howard was not involved in the assault, but watched, laughed, and did not try to stop Defendants King, Burger, and/or Does 1-2.

28. When the assault stopped, Mr. Rupp was handcuffed.

29. Defendant Doe 1 screamed at Mr. Rupp to start walking and Defendants King, Burger, and Does 1-2 and Defendant Howard all escorted Mr. Rupp to a transport van. Mr. Rupp had difficulty walking to the van, as his hips and legs were in a lot of pain after the assault.

30. Once in the van, Defendant King drove, Defendant Howard was in the passenger seat, and Defendant Burger and Defendant Doe 2 sat behind Mr. Rupp. Defendant Doe 1 did not go with the group in the van.

31. During the two-minute drive to the Special Housing Unit ("SHU"), Defendant Burger and Defendant Doe 2 behind Mr. Rupp kept punching and smacking the sides of his head.

32. When the van arrived at SHU, Defendant Short and one of the Defendants (Barnhart, Morat, Bartlett, or Jones) were waiting outside for them.

33. Defendant Howard walked Mr. Rupp over to Defendant Short and told him that Mr. Rupp had been "disrespectful towards a female civilian." Defendant Short said he would "fix that" and both he and one of the Defendants (Barnhart, Morat, Bartlett, or Jones) brought Mr. Rupp upstairs and into SHU.

34. Once inside, Defendant Short ordered Mr. Rupp into a pat-frisk position. Defendants Barnhart, Morat, Bartlett, and Jones then assaulted him on and off for approximately 15 minutes. Defendant Short was not involved in the assault, but watched and did not try to stop Defendants Barnhart, Morat, Bartlett, and/or Jones.

35. When Defendants Barnhart, Morat, Bartlett, and Jones were done beating him, Mr. Rupp was escorted to his cell, where he began vomiting uncontrollably. He was also unable to bend his leg, had a severe headache, and had significant pain in his chest and legs.

36. Mr. Rupp was not afforded any medical care whatsoever for at least two days after these assaults.

37. When the nurse saw the extent of Mr. Rupp's injuries, she called the facility doctor immediately, commenting that it looked like he had been "hit by a truck." Mr. Rupp was subsequently transported to St. Elizabeth's Hospital for evaluation.

38. Upon return to the facility, Mr. Rupp's requests for photos of his injuries were repeatedly ignored. It was not until October 20, 2021—over one week after the assault—that DOCCS finally took photographs of the bruising and injuries to Mr. Rupp's person.

39. After the assault, Mr. Rupp was ticketed a *second* time for the interaction with Ms. Younis, this time by Defendant Howard, who reported that he received a call informing him that Mr. Rupp was "aggressive with a female civilian."

40.     Mr. Rupp was wrongly charged and falsely punished in the SHU based on these two improper disciplinary tickets.

b. <u>April 19, 2022 Incident</u>

41.     On April 19, 2022, at approximately 11:00 a.m. and shortly thereafter, Mr. Rupp was assaulted twice by a group of incarcerated individuals within Building 4, Dorm G of Mid-State Correctional.

42.     Several hours prior to his assault, Defendants Rastani and Atcher came to the housing unit and starting yelling at Mr. Rupp. Defendants Rastani and Atcher claimed that Mr. Rupp was a "rat" for reporting staff misconduct, referencing an October 2021 incident where Mr. Rupp was assaulted by the Defendant Does.

43.     Defendants Rastani and Atcher forced Mr. Rupp into a pat and frisk position and continued to threaten him. One stated that he would "fuck him up worse than the last one" and another said stated, "I'm not going to fuck you up, I'm going to let THEM do it!" pointing at the entire dorm of incarcerated individuals who were watching and listening.

44.     Defendants Rastani and Atcher finally let Mr. Rupp go and he went to his morning program at 8:00 a.m.

45.     When Mr. Rupp returned to the housing unit from his morning program a little after 11:00 a.m., he was assaulted twice by known gang members in the unit for being a "rat."

46.     Mr. Rupp was forced by the other incarcerated individuals to pack his belongings and leave the housing unit; he was eventually transferred to Building 2.

47.     Prior to being transferred, Mr. Rupp visited the Building 4 sergeant's office to ask to be taken to medical, but was denied.

48.     When Mr. Rupp arrived at Building 2, Dorm F, he asked a female CO if he could be taken to medical, and she refused to take him.

49.     Mr. Rupp, who was beginning to experience chest pains, became concerned that something was wrong with his pacemaker and called a family member on the outside to see if she could call the facility for him. Mr. Rupp also put in a sick call request.

50.     He continued to ask various DOCCS staff in the housing unit to take him to medical, but was denied until approximately two days later, when he was finally taken to medical.

51.     When he was finally brought to medical, they immediately saw his injuries and transported him to St. Elizabeth's Hospital, where he was admitted for a Non-ST-Elevation Myocardial Infarction (NSTEMI), a type of heart attack.

52.     Upon his return to Mid-State Correctional on April 25, 2022, Mr. Rupp was served with a false ticket in relation to this incident.

## THE INJURIES TO PLAINTIFF

53.     This action seeks damages on behalf of Plaintiff for the extraordinary emotional pain and suffering and injuries to his person, that he was forced to endure as a consequence of the Defendants' decidedly wrongful actions.

54.     The Defendants' actions were wanton, reckless, and malicious, as well as in blatant disregard of Plaintiff's civil rights, and as such the Defendants are liable for punitive damages.

55.     All of the causes of action pleaded herein fall within one or more of the exceptions set forth in New York's Civil Practice Law & Rules 1602 with respect to joint and several liability.

**FIRST CLAIM FOR RELIEF:**
**EXCESSIVE FORCE UNDER 42 U.S.C. § 1983**
**AGAINST DEFENDANTS KING, BURGER, BARNHART, MORAT, BARTLETT,**
**JONES, AND DOES #1-2**

56.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

57.     Correction Officers employed by the Department of Corrections and Community Supervision have a duty to refrain from excessive and unnecessary force against persons within their custody and control.

58.     Defendants King, Burger, Barnhart, Morat, Bartlett, Jones, and Does 1-2 used physical force against Plaintiff, causing bleeding, pain, and bruising.

59.     As a result of this excessive force, Plaintiff endured immense pain and suffering and significant, permanent physical injury to his hips and back.

60.     Defendants King, Burger, Barnhart, Morat, Bartlett, Jones, and Does 1-2 engaged in the use of force that was excessive, malicious, gratuitous, and with the intention of inflicting physical and emotional harm to plaintiff.

61.     That by virtue of the aforementioned acts by Defendants King, Burger, Barnhart, Morat, Bartlett, Jones, and Does 1-2, Plaintiff was deprived civil rights guaranteed under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment, and Defendants King, Burger, Barnhart, Morat, Bartlett, Jones, and Does 1-2 therefore are liable to Plaintiff for damages under 42 U.S.C. § 1983.

62.     As a result of the above unconstitutional conduct, Plaintiff was caused to suffer physical and emotional injuries.

63.     As a result of the above unconstitutional conduct, Defendants King, Burger, Barnhart, Morat, Bartlett, Jones, and Does 1-2 are liable for punitive damages.

**SECOND CLAIM FOR RELIEF:**
**FAILURE TO INTERVENE UNDER 42 U.S.C. § 1983**
**AGAINST DEFENDANTS HOWARD, SHORT, KING, BURGER, BARNHART,**
**MORAT, BARTLETT, JONES, AND DOES #1-2**

64.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

65.     Defendants Howard, Short, King, Burger, Barnhart, Morat, Bartlett, Jones, and Does 1-2failed to intervene to prevent, end or report the unlawful and unconstitutional conduct to which Plaintiff was subjected despite the fact that they had opportunities to do so.

66.     Specifically, Defendant Howard failed to intervene to prevent, end, or report the unlawful use of excessive force against Plaintiff by Defendants King, Burger, and Does 1-2; Defendant Short failed to intervene to present, end, or report the unlawful use of excessive force against Plaintiff by Defendants Barnhart, Morat, Bartlett, and Jones; and Defendants King, Burger, Barnhart, Morat, Bartlett, Jones, and Does #1-2 failed to intervene against one another during both of these assaults.

67.     The above-named Defendants thereby displayed deliberate indifference to Plaintiff's rights, including Plaintiffs right to be free from cruel and unusual punishment.

68.     That by virtue of the aforementioned acts by the above-named Defendants, Plaintiff was deprived of civil rights guaranteed under the Constitution of the United States, and the above-named Defendants therefore are liable to Plaintiff for damages under 42 USC § 1983.

69.     As a result of the above unconstitutional conduct, Plaintiff was caused to suffer physical  and emotional injuries.

70.     As a result of the above unconstitutional conduct, the above-named Defendants are liable for punitive damages.

**THIRD CLAIM FOR RELIEF:**
**DELIBERATE INDIFFERENCE UNDER**
**42 U.S.C. § 1983 AGAINST DEFENDANTS ATCHER AND RASTANI**

71.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

72.     By reason of the foregoing, and by behaving with deliberate indifference to circumstances presenting a substantial risk of serious harm, Defendants Atcher and Rastani deprived Plaintiff of the rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C Section 1983, including, but not limited to, rights guaranteed by the Eighth Amendment of the United States Constitution.

73.     Defendants had actual knowledge of, but disregarded, the fact that labeling someone a 'rat' in front of a group of incarcerated individual would result in an excessive risk to Plaintiff's safety. But for Defendants' willful and deliberate indifference to the danger posed on his life, Plaintiff would not have been attacked or experienced the other physical and psychological injuries he still has today.

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all of the Defendants:

      a.     Compensatory damages;

      b.     Punitive damages;

      c.     The convening and empaneling of a jury to consider the merits of the claims herein;

      d.     Costs and interest and attorney's fees;

      e.     Such other and further relief as this court may deem appropriate and equitable.

Dated: New York, New York
      October 22, 2024

Rickner PLLC

By: _[signature]_

        Sara Wolkensdorfer

14 Wall Street, Suite 1603
New York, New York 10005
Phone: (212) 300-6506
Fax: (888) 390-5401
*Attorney for Plaintiff*