# EXHIBIT K

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

_____

PETER RUPP,

      Plaintiff,

  -against-                Case No.:

SGT R.B. HOWARD; SGT SHORT;     9:24-cv-394(GTS/ML)

CORRECTION OFFICER RASTANI;

CORRECTION OFFICER ATCHER;

CORRECTION OFFICER M. KING;

CORRECTION OFFICER D. BURGER;

CORRECTION OFFICER C. BARNHART;

CORRECTION OFFICER W. MORAT;

CORRECTION OFFICER J. BARTLETT;

CORRECTION OFFICER M. JONES;

CORRECTION OFFICER JOHN DOES #1-2,

      Defendants.

_____

VIDEOTAPED DEPOSITION

_____


WITNESS:                C.O. JOSHUA BARTLETT

DATE:                   Wednesday, February 12, 2025

START TIME:             1:29 p.m., ET

END TIME:               2:05 p.m., ET

REMOTE LOCATION:        Webex videoconference platform

PROCEEDINGS OFFICER:    Ashby Everhart, CER-1615

JOB NO.:                33471

A P P E A R A N C E S


RICKNER, PLLC

14 Wall Street

Suite 1603

New York, New York 10005

By:  SARA WOLKENSDORFER, ESQUIRE

     sara@ricknerpllc.com

Appearing for Plaintiff


OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL

300 South State Street

Suite 300

New York, New York 13202

By:  ELIZABETH LOMBARDI, ESQUIRE

     YVETTE VELASCO, ESQUIRE

     elizabeth.lombardi@ag.ny.gov

     yvette.velasco@ag.ny.gov

Appearing for Defendants

INDEX OF TESTIMONY

EXAMINATION OF C.O. JOSHUA BARTLETT:                    PAGE

By Ms. Wolkensdorfer                                    10

                    I N D E X   O F   E X H I B I T S

                         (retained by counsel)


EXHIBIT    DESCRIPTION                                    PAGE

3          To-from Statement                               25

FEDERAL STIPULATIONS

IT IS HEREBY STIPULATED AND AGREED by and between the attorneys for the respective parties that the presence of the Referee be waived;

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to form, are reserved until the time of trial;

IT IS FURTHER STIPULATED AND AGREED that this deposition may be utilized for all purposes as provided by the Federal Rules of Civil Procedure;

AND FURTHER STIPULATED AND AGREED that all rights provided to all parties by the Federal Rules of Civil Procedure shall not be deemed waived and the appropriate sections of the Federal Rules of Civil Procedure shall be controlling with respect thereto.

FEDERAL REMOTE STIPULATIONS

IT IS HEREBY STIPULATED, by and between the attorneys of record for all parties to the above-entitled action, that:

Pursuant to Rule 30(b)(4) of the Federal Rules of Civil Procedure, this deposition will be conducted by remote videoconference with the oath being administered remotely and a court reporter creating an accurate written record; that, if necessary, the parties agree that each witness can be identified with picture identification;

No attorney, nor any party or witness, shall capture any still photographs, nor record, by video or audio, any part of these deposition proceedings;

Each attorney agrees to instruct their witness that there is to be no communication with anyone outside of the identified and participating group, by chat, text, email, or other means during the deposition;

There shall be no other person in the room with the witness during their deposition;

Any phone or electronic device in the room with a witness shall be identified and not read, referred to, or otherwise used during the witness' deposition, unless agreed to by all counsel on record.

                    P R O C E E D I N G S

THE PROCEEDINGS OFFICER:  Good afternoon.
We are now on the record.  Today's date is February 12,
2025, and the time is approximately 1:29 p.m., Eastern.

My name is Ashby Everhart, and I am the
officer designated by Remote Legal, 11 Broadway, Suite
468, New York, New York, to take the record of this
proceeding.

This is the deposition of Joshua
Bartlett, taken in the matter of Rupp versus Howard, et
al., Case Number 9:24-cv-394, filed in the United States
District Court, Northern District of New York.

Would all counsel please identify
themselves for the record, and state who they represent,
starting with the noticing attorney.

MS. WOLKENSDORFER:  Sara Wolkensdorfer of
Rickner, PLLC on behalf of the plaintiff, Peter Rupp.

MS. LOMBARDI:  Assistant Attorney General
Elizabeth Lombardi representing the defendant, Joshua
Bartlett, New York State Office of the Attorney General.

MS. VELASCO:  Assistant Attorney General
Yvette Velasco from the Utica-Ro Attorney General's
Office representing the State of New York.

THE PROCEEDINGS OFFICER:  Thank you.

All right.  This deposition is being

taken remotely on behalf of the plaintiff and is being conducted pursuant to the procedural rules and laws governing this matter.

As such, all parties agree to this means of capturing the official record, which may include recording by audio, audiovisual, and/or stenographic means, and agree not to oppose admissibility of the testimony in this proceeding on the basis of the personnel or method by which the testimony was captured.

Further, all parties agree that the deposition officer or person administering the oath may be authorized to administer the oath under the rules where they reside.

Do the parties so stipulate?

MS. WOLKENSDORFER:  Yes.

MS. LOMBARDI:  Yes.

THE PROCEEDINGS OFFICER:  All right. Thank you.

All right.  Officer Bartlett, could you please state and spell your name for the record.

MR. BARTLETT:  Joshua Bartlett.  J-O-S-H-U-A B-A-R-T-L-E-T-T.

THE PROCEEDINGS OFFICER:  Thank you so much.

And can you raise your right hand, so I

can swear you in.

Do you solemnly swear or affirm under the penalties of perjury that the testimony you shall give will be the truth, the whole truth, and nothing but the truth?

MR. BARTLETT:  I do.

THE PROCEEDINGS OFFICER:  Thank you.

Counsel, you may proceed.

MS. WOLKENSDORFER:  Thank you.

EXAMINATION

BY MS. WOLKENSDORFER:

Q   Good afternoon.  My name is Sara Wolkensdorfer.  As I said before, I'm one of the attorneys for Peter Rupp.  I'm going to go over a few ground rules before we begin.  It's important that we both speak slowly and not talk over one another so that the court reporter can hear everything we say and so that we end up with a clear record.  To help please wait until I finish my question before you begin answering, and I will do my best to wait for your complete answer before moving on as well.

The court reporter cannot record nods of the head or gestures.  So please be sure to answer each question verbally whether the answer is yes, no, or something else.

If at any time you don't understand a question that I'm asking you or you need me to rephrase it, please just let me know and I'll be happy to ask it in a different way.

If you need a break at any time also, please just let myself or your attorneys know.  The only thing I ask is that if a question has been asked of you, that you answer that pending question before taking a break.

Finally, your attorney or attorneys are likely going to make objections to some of the questions that I ask.  Unless they direct you not to answer, you can respond after they object.  Does all of that make sense?

A    Yes.

Q    Okay.  Where are you currently located?

A    Where do I work or where am I right now?

Q    Where are you right now?

A    I'm in the State Office Building in Utica.

Q    And for the record, do you have any documents in front of you?

A    I do not.

Q    Have you ever been deposed before?

A    Yes.  On unrelated matters.

Q    How many times have you been deposed?

A    I believe once.

Q    And was it for a -- if you know, a civil or a

criminal matter?

A    I don't know what it'd be considered.

Q    Okay.  What was the nature of the lawsuit, if you know?

A    It was a matter at the jail.

Q    Did you go to court for this?

A    I did.

Q    And was this a case in which you were a party to the action?

A    Yes.

Q    Do you recall what year it was?

A    I believe it was 2016 -- or when the -- when it happened.  The -- the court I don't remember, it was years later.

Q    Okay.  And was the plaintiff in that case a -- an individual who had been incarcerated in 2016?

A    Yes.

Q    And what was -- what was the nature of the allegation?

         MS. LOMBARDI:  I would object to that as unrelated to this matter.

         But you can go ahead and answer the question without specifics.

         THE WITNESS:  It was a use of force -- a use of force incident at the jail.

BY MS. WOLKENSDORFER:

Q    And did the incident or alleged incident involve just you or were there other jail personnel involved?

A    There were others.

Q    And do you know how that case resolved?

A    I believe it got dismissed.

Q    Other than for that case, have you testified at any other hearing, trial, or deposition?

A    No.

Q    Have you ever testified at any disciplinary hearings for incarcerated individuals?

A    No.

Q    And do you understand that while we are on Zoom, your responsibility to tell the truth is the same as if you were taking the stand in a courtroom?

A    Yes.

Q    Is there any reason that you would be -- excuse me -- unable to tell the truth today?

A    No.

Q    Did you have the opportunity to prepare for today's deposition?

A    I read over To-from and the allegations. That's --

Q    Okay.

A    -- really it.

Q    And without telling me what was said, did you have any conversations with your attorneys prior to today?

A    Yes.  A little bit on the phone.

Q    When did you speak with them on the phone?

A    Oh, I remember it was last week.  I think it was last week.  I don't remember the date.

Q    And again, without telling me any of the contents of the conversation, do you know for approximately how long you spoke with your attorneys?

A    Maybe 20 minutes.

Q    And the documents that you mentioned, I heard a To-from, and then you also mentioned the -- I believe the complaints; is --

A    Yes.

Q    -- that correct?

A    Sorry.  Yes.

Q    Did you review -- what complaints did you review?  Both of them or one of them?

A    I don't know if I read both of them or one.  I read one, I don't know if it was both together or what. I don't know what it was.

Q    Okay.  You read the one in which you're named as a defendant?

A     Yes.

Q     Okay.  And other than your attorneys, have you spoken with anyone else about this lawsuit?

A     No.

Q     How long have you worked for the Department of Corrections?

A     Nine years in April.

Q     And prior to working for the Department of Corrections, have you held any other law enforcement positions?

A     No.

Q     When you started working for the Department of Corrections, did you go through some sort of training or academy?

A     I did.

Q     How long was that?

A     Two months.

Q     And did those trainings include use of force?

A     Yes.

Q     Did those trainings include how to properly document incidents and reports if necessary, as part of your job?

A     Yes.

Q     When you started with DOCCS, what was your rank?

A    Corrections officer as same as now.

Q    Okay.  So throughout the course of your nine years, you have been a corrections officer?

A    Yes.

Q    When you started with DOCCS, did you have any particular position, meaning were you assigned to do one set of tasks?

A    No.  I believe I was a resource officer when I first started, so wherever they needed me.

Q    And do you have a particular assignment currently?

A    Yes.

Q    What is your assignment?

A    I am the 10-1, which is our SHU.  I am the floor officer.

Q    And on the date of the incident in this case, which was October 12th of 2021, did you have a particular assignment?

A    I did.

Q    What was that?

A    I believe I was the floor officer that night also.

Q    Other than the two assignments that you mentioned, have you had any other specific assignments while working for the Department of Corrections?

A     Yes.  I've had a couple of bids in dorms.

Q     Okay.  And you currently work at Mid-State Correctional Facility?

A     Yes.

Q     Have you worked at Mid-State for the entirety of your nine years with DOCCS?

A     No.  I had two months at Greene Correctional.

Q     When did you work at Greene Correctional?

A     Oh, boy.  From -- from June till August of '16.  I don't remember the exact dates, but I went to Mid-State August 8th.

Q     For each of the assignments that you have had, do you receive any sort of special training with respect to those assignments?

A     No.

Q     Do you receive ongoing training such as an annual training?

A     We do trainings.  Yes.

Q     How often?

A     I believe every other month or every three months we do trainings through the facility.

Q     And do some of those ongoing trainings include trainings on the use of force?

MS. LOMBARDI:  Sara, can you still hear us?  You cut -- you cut out on our end, so if you could

just repeat the question.

MS. WOLKENSDORFER: Yeah. You cut out for us as well.

BY MS. WOLKENSDORFER:

Q   In respect to those ongoing trainings that you receive, do some of those include training regarding the use of force?

A   Yes.

Q   Directing your attention to the date of the incident, which was October 12th of 2021, I believe, you said you were working as a floor officer in SHU; is that correct?

A   Yes.

Q   And SHU is in 1 Building?

A   SHU was in 10 Building.

Q   10 building?  I'm sorry.  Specifically 10-1?

A   Yes.

Q   And as a floor officer, what are your duties and obligations?  Just very briefly, you can summarize.

A   Yeah.  Rounds, whatever inmate needs. Showers, admissions, property, feeding, everything -- wreck.

Q   On the date of the incident, do you recall who you were working with that day?

A   I don't recall.  No.

Q    Do you recall who your supervisor was that day?

A    That I do recall.

Q    And who is that?

A    Sergeant Short.

Q    And did there come a time on the date of the incident where Mr. Rupp was escorted into 10 building?

A    Yes.

Q    Do you recall what time that was?

A    I -- I don't recall.  No.  Without reading -- reading that I did not recall.  No.

Q    What would you be able to read that would help refresh your memory?

A    As far as time?

Q    Yes.

A    I read the -- I believe it was after 4, but that's just from reading the To-from -- not To-from, the allegations from -- from Rupp.

Q    So in the -- your independent recollection -- or you don't have an independent recollection of what time of day he arrived at SHU; is that correct?

A    No.  No.  I do not.

Q    Okay.  Do you recall who escorted him into SHU that day?

A    I don't recall.

Q    Do you recall if -- when he was escorted into SHU, he was handcuffed?

A    I'm -- yes.  I'm sure he was handcuffed.  I don't remember the specific incident but we've never brought anybody in that was not handcuffed, so.

Q    And do you recall if he was handcuffed in the front or in the back?

A    He would have been handcuffed in the back.

Q    Okay.  And you're making that statement not based off of your independent recollection that he was, in fact, handcuffed in the back. it's just that that is typical procedure for these sorts of escorts; is that accurate?

A    Correct.

Q    Okay.  And when he was first escorted into SHU, what was the first thing that happened?

A    When he was brought in, he would have been put in our strip cage -- our admission cage holding pen that we have.

Q    And do you recall who walked him into that admission cage or back to the admission cage?

A    When he came in, I would have -- this is not independent but I would have taken him and escorted him to the cage once he came through my door.

Q    Do you have any independent recollection of

whether Mr. Rupp said anything upon his arrival to SHU?

A    I do not.

Q    Do you have any independent recollection of what -- if the escorting officers made any statements to you about Mr. Rupp?

A    I don't recall.

Q    Do you remember why he was being transferred to SHU?

A    I don't.

Q    Do you recall seeing any injuries -- visible injuries on Mr. Rupp?

A    I do not.

Q    You said that he would have been taken to an admission cage.  What would happen in that admission area?

A    The door would be locked.  He would be asked mental health questions by a sergeant.  A 3152 would be a -- his mental health, not referral, but see if he was able to be in the box and then we would start our strip.

Q    Who is the -- is Sergeant Short the sergeant that would have performed that mental health evaluation?

A    Yes.

Q    And who would have performed the search?

A    I would have.

Q    After you perform the search, do you -- what

happened next?

A    After the search, he gets dressed.  I would let -- tell him the rules of the box and how the food works and wreck and all that and then we would escort him to his cell.

Q    Were you present when Sergeant Short asked Mr. Rupp the series of mental health questions?

A    I would have been.  Yes.

Q    And would Sergeant Short have been present when you performed your search of Mr. Rupp?

A    Yes.

Q    Do you recall if anyone else was present during any of the -- or -- either the mental health evaluation or the search?

A    I don't recall.  I don't recall who was in there.  They wouldn't have been in the -- in that room anyways.

Q    When you performed your search, do you remember seeing any visible injuries on Mr. Rupp?

A    I do not.

Q    Do you remember Mr. Rupp making any statements?

A    I do not.

Q    Do you remember him asking for medical attention?

A    No.  I do not.

Q    Did you -- do you recall saying anything to Mr. Rupp either during the mental health evaluation or while performing the search?

A    Nothing other than the normal procedures that I do for everybody that comes in.

Q    Okay.  And at no point up until after the search was performed, were you informed why Mr. Rupp was there?

A    No.

Q    Sorry.  During the strip search is Mr. Rupp -- or was Mr. Rupp still handcuffed?

A    No.  The handcuffs are taken off so we can take his clothes off.

Q    What happened after the search was performed?

A    After the search, I would have given him the rules of the box and then he was escorted to his cell.

Q    Did you escort him to his cell?

A    I did.

Q    Did you escort him alone or with any other officers?

A    The sergeant would have been with me, and I don't recall if there was another officer with us or not.

Q    Okay.  To be clear, at no point during this

admission process that you've described, were you alone with Mr. Rupp --

A    No.

Q    -- is that correct?

A    That's correct.

Q    And for the entirety of the admission process, you were present with Mr. Rupp; is that correct?

A    Yes.

Q    So if someone, whether a correction officer, another incarcerated individual, had assaulted Mr. Rupp, you would have seen it; is that correct?

A    Yes.

Q    Do you recall Mr. Rupp's demeanor when he arrived to SHU?

A    I don't recall.

Q    After you escorted Mr. Rupp to his cell, do you recall having any other interactions with him, either on the date of the incident or after?

A    I don't recall.  If I did, it would have been on a round.  But I don't recall any direct interaction with him.  No.

Q    Okay.  And to be clear, at no point on the date of the incident did you physically assault Mr. Rupp?

A    At no point.  No.

Q You never punched him?

A No.

Q You never kicked him?

A No.

Q And you never slapped him?

A No.

Q And you never saw any other officer or sergeant do any of those things to Mr. Rupp?

A I did not.

Q Okay. You mentioned earlier a To-from statement. Is that the only report or piece of writing that you wrote with respect to this incident?

A That's all I recall. I might have signed a strip frisk form, but --

Q What is a strip frisk form?

A It would just be that whatever was -- if he had contraband on him, it would just be a no contraband found and -- and that would be it.

Q Okay. I'm going to show you a document that we can have marked as Exhibit 3. This is Bates stamp 18. Do you recognize this?

A Yes.

(Exhibit 3 marked for identification.)

BY MS. WOLKENSDORFER:

Q Is this the To-from statement that you were

referring to earlier?

A    Yes.

Q    I can't remember if you explained this already, but can you explain what T3 is in this statement?

A    It's 2 or 3, so that would be 3 to 11.

Q    Did anyone help you write this report?

A    No.

Q    Are all of the words in this report yours?

A    Yes.

Q    And when you reviewed this report during your preparation for today's deposition as well as having the ability to review it right now, did you see any errors that you wanted to correct?

A    No.

Q    Do you know if any other reports or To-from statements were made with respect to this incident?

A    I do not know.

MS. LOMBARDI:  Did we cut out for a minute there or did you hear that response?

MS. WOLKENSDORFER:  I heard him.

MS. LOMBARDI:  Okay.

MS. WOLKENSDORFER:  Sorry.  I'm just reading my notes.

MS. LOMBARDI:  No.  That's fine.  You

glitched on our screen, so I thought we may have dropped off again.

BY MS. WOLKENSDORFER:

Q   Are you aware that Mr. Rupp was taken to the hospital two days after this incident?

A   I was not aware of that.  No.

Q   Prior to today, did you know that Mr. Rupp had been taken to the hospital?

A   I -- I don't recall if I was aware.  I don't recall hearing it.  I don't know if I was given that information or not.

Q   Okay.  And are you aware that there were photographs taken of Mr. Rupp approximately seven days after the date of the incident?

A   Yes.

Q   Have you seen those photos?

A   I've seen a photo -- maybe a couple photos.  I don't remember how many I saw.

Q   Okay.  Are you aware that Mr. Rupp filed a grievance regarding this incident?

A   Then or now or --

Q   Then.

A   I don't remember if I was aware.  I'm -- if he did, I'm sure I was aware, but I don't recall.

Q   Were you ever spoken to or interviewed by an

investigator from OSI regarding this incident?

A    Yes.

Q    Do you recall how shortly after the date of the incident that was?

A    I don't recall the exact date.  No.

Q    Would you say it was within a few months after the incident?

A    I would say I don't -- I really don't recall, but I would say it was.

Q    Okay.  How about -- was it within six months after the incident?

A    I really don't know.  I -- I really don't.  I truly don't.

Q    And how did you find out that OSI wanted to speak to you?

A    I believe a sergeant or -- I don't remember who told me.  One of my supervisors told me.  I don't remember who it was.

Q    How soon after you were told that they wanted to interview you -- did the interview take place?

A    I don't recall.

Q    Prior to the interview with OSI, did you have the opportunity to meet with a union representative or speak with someone in your union?

A    I believe I did.  I don't remember who it was

though.

Q    I -- there was a union representative present for the meeting.  I don't remember who that was either.

Q    Okay.  So to be clear, you spoke with a union representative prior to the interview and then there was also a union representative present at the actual interview?

A    Yes.

Q    Do you recall how long the interview was with OSI?

A    I don't recall exactly.  It was not very long, maybe a half hour.

Q    Other than this incident, have you ever been interviewed by OSI before?

A    Yes.

Q    Other than this incident, could you estimate how many times you've been interviewed by OSI?

A    I believe it's been two.

Q    To be clear, two interviews separate and apart from the interview that you had regarding this incident?

A    Correct.

Q    And were these interviews related to excessive force or were they about something else?

            MS. LOMBARDI:  I'm going to object to that based on these unrelated investigations.

However, defendant can answer without going into specific details.

THE WITNESS:  They were both for uses of force.

BY MS. WOLKENSDORFER:

Q   Do you recall when they were -- when the -- sorry -- when the interviews took place?

A   I don't recall the -- I don't even recall that.  I would imagine 2016 for the -- for one, and the other one I don't recall.  The other one, I wasn't even present for the use of force.  He just named me because he knew my name.

Q   And do you know what the outcome of either of those OSI investigations were?

MS. LOMBARDI:  I'm going to object as unrelated to this case.

Certainly he could speak to, if he's aware with this particular OSI investigation related to this case.

You can go ahead and answer it without specifics.

THE WITNESS:  I was indemnified on both of them.  I don't know what the -- what they specifically come up with, but I was indemnified on both of them.  And the -- one case got dismissed, so.

BY MS. WOLKENSDORFER:

Q    And was -- so was one of the OSI investigations that you mentioned -- sorry, withdrawn.

Was one of the OSI interviews that you just spoke about related to the lawsuit that you told me about at the beginning of this deposition?

A    Yes.

Q    Okay.  And do you -- do you know what the result of the OSI investigation was with respect to Mr. Rupp's allegations?

A    I do not recall.  I don't know.

Q    Is there anything that you said during your testimony today that you think is inaccurate or that you'd like to clarify or correct?

A    No.

Q    I have no further questions.

MS. LOMBARDI:  I do not have any questions.

MS. VELASCO:  Neither do I.

THE PROCEEDINGS OFFICER:  All right. Thank you so much.

And same as the first, Ms. Wolkensdorfer, you want the original and pay and provide to Ms. Lombardi?

MS. WOLKENSDORFER:  Yes.

THE PROCEEDINGS OFFICER:  Very good. Thank you so much.

Off record time is 2:05 p.m., Eastern.

(Proceedings concluded at 2:05 p.m., ET)

* * * * *

CERTIFICATE OF PROCEEDINGS OFFICER

I, Ashby Everhart, hereby certify:

That the foregoing proceedings were taken before me at the time and place therein set forth;

That the proceedings were recorded by me and thereafter formatted into a full, true, and correct transcript of same;

I further certify that I am neither counsel for nor related to any parties to said action, nor in any way interested in the outcome thereof.

DATED, this 22nd day of February 2025.

_____

Ashby Everhart

CER-16-15

Proceedings Officer

A C K N O W L E D G M E N T

I do hereby certify that having been first duly sworn to testify to the truth, I gave the above testimony on February 12, 2025.

I further certify that the foregoing transcript is a true and correct transcript of the testimony given by me at the time and place specified.

_____

C.O. JOSHUA BARTLETT

Sworn to before me this ___ day of _____, 20__

_____

Notary Public

E R R A T A   S H E E T

Deponent:  C.O. JOSHUA BARTLETT

Deposition Date:  Wednesday, February 12, 2025

PAGE   LINE   CHANGE FROM/TO    REASON FOR CHANGE

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

_____  _____  _____  _____

Under penalties of perjury, I declare that I have

read the foregoing deposition and hereby affix my

signature that same is true and correct, except as noted

above.

_____          _____

C.O. JOSHUA BARTLETT          Date

Sworn to before me this ___ day of _____, 20__

_____

Notary Public

**WORD INDEX**

**< 1 >**
**1**  18:14
**1:29**
 2:7    8:4
**10**   4:4
 18:15,
16   19:7
**10005**
 3:6
**10-1**
 16:14
 18:16
**11**   8:6
 26:6
**12**   2:6
 8:3
 34:5
 35:1
**1-2**   1:16
**12th**
 16:17
 18:10
**13202**
 3:14
**14**   3:4
**16**   17:10
**1603**   3:5
**18**   25:21

**< 2 >**
**2**   26:6
**2:05**
 2:8
 32:3, 4
**20**
 14:12
 34:15
 35:1

**2016**
 12:12,
16   30:9
**2021**
 16:17
 18:10
**2025**
 2:6
 8:4
 33:13
 34:5
 35:1
**22nd**
 33:13
**25**   5:5

**< 3 >**
**3**   5:5
 25:20,
23   26:6
**30(b)(4**
 7:6
**300**
 3:12, 13
**3152**
 21:17
**33471**
 2:11

**< 4 >**
**4**   19:16
**468**   8:7

**< 8 >**
**8th**
 17:11

**< 9 >**
**9:24-cv-**
**394**   8:11
**9:24-cv-**
**394(GTS/ML**

**1:7**

**< A >**
**ability**
 26:13
**able**
 19:12
 21:19
**academy**
 15:14
**accurate**
 7:9
 20:13
**action**
 7:5
 12:9
 33:10
**actual**
 29:6

**administer**
 9:12
**administer**
**ed**   7:8
**administer**
**ing**   9:11
**admissibil**
**ity**   9:7
**admission**
 20:18,
21
 21:14
 24:1, 6
**admissions**
 18:21
**affirm**
 10:2
**affix**
 35:1

**afternoon**
 8:2
 10:12
**agree**
 7:10
 9:4, 7,
10
**AGREED**
 6:3, 6,
9, 12
 7:25
**agrees**
 7:16
**ahead**
 12:22
 30:20
**al**   8:11

**allegation**
 12:19
**allegation**
**s**   13:23
 19:18
 31:10
**alleged**
 13:2
**and/or**
 9:6
**annual**
 17:17
**answer**
 10:20,
23, 24
 11:8, 11
 12:22
 30:1, 20
**answering**
 10:19
**anybody**
 20:5
**anyways**
 22:17

**apart**
 29:19
**Appearing**
 3:9, 19
**appropriat**
**e**   6:15
**approximat**
**ely**   8:4
 14:11
 27:13
**April**
 15:7
**area**
 21:15
**arrival**
 21:1
**arrived**
 19:21
 24:14
**Ashby**
 2:10
 8:5
 33:3, 17
**asked**
 11:7
 21:16
 22:6
**asking**
 11:2
 22:24
**assault**
 24:23
**assaulted**
 24:10
**assigned**
 16:6
**assignment**
 16:10,
13, 18
**assignment**
**s**   16:23,

*24*
17:*12, 14*
Assistant
8:*18, 21*
ATCHER
1:*9*
attention
18:*9*
22:*25*
ATTORNEY
3:*11*
7:*13, 16*
8:*15, 18,
20, 21,
22*   11:*9*
attorneys
6:*4*
7:*4*
10:*14*
11:*6, 9*
14:*3, 11*
15:*2*
audio
7:*15*
9:*6*
audiovisual
l   9:*6*
August
17:*9, 11*

authorized
9:*12*
aware
27:*4, 6,
9, 12, 19,
23, 24*
30:*18*


< B >
back
20:*7, 8,
11, 21*

BARNHART
1:*12*
BARTLETT
1:*14*
2:*5*
4:*3*
8:*10, 20*
9:*19, 21*
10:*6*
34:*13*
35:*1*
B-A-R-T-L-
E-T-T
9:*22*
based
20:*10*
29:*25*
basis
9:*8*
Bates
25:*20*
beginning
31:*6*
behalf
8:*17*
9:*1*
believe
11:*24*
12:*12*
13:*7*
14:*14*
16:*8, 21*
17:*20*
18:*10*
19:*16*
28:*16,
25*   29:*18*
best
10:*20*
bids
17:*1*
bit   14:*5*

box
21:*19*
22:*3*
23:*17*
boy   17:*9*
break
11:*5, 8*
briefly
18:*19*
Broadway
8:*6*
brought
20:*5, 17*
Building
11:*17*
18:*14,
15, 16*
19:*7*
BURGER
1:*11*


< C >
C.O   2:*5*
4:*3*
34:*13*
35:*1*
cage
20:*18,
21, 24*
21:*14*
capture
7:*14*
captured
9:*9*
capturing
9:*5*
Case
1:*6*
8:*11*
12:*8, 15*
13:*6, 8*
16:*16*

30:*16,
19, 25*
cell
22:*5*
23:*17,
18*   24:*16*
CER-1615
2:*10*
CER-16-15
33:*18*
Certainly
30:*17*
CERTIFICAT
E   33:*1*
certify
33:*3, 9*
34:*3, 7*
CHANGE
35:*1*
chat
7:*18*
Civil
6:*11, 14,
15*   7:*7*
11:*25*
clarify
31:*14*
clear
10:*18*
23:*25*
24:*22*
29:*4, 19*
clothes
23:*14*
come
19:*6*
30:*24*
comes
23:*6*
communicat
ion   7:*17*

complaints
14:*15, 19*
complete
10:*20*
concluded
32:*4*
conducted
7:*7*   9:*2*

considered
12:*2*
contents
14:*10*

contraband
25:*17*
controllin
g   6:*16*
conversati
on   14:*10*
conversati
ons   14:*3*
correct
14:*17*
18:*12*
19:*21*
20:*14*
24:*4, 5,
7, 11*
26:*14*
29:*21*
31:*14*
33:*7*
34:*8*
35:*1*

CORRECTION
1:*8, 9,
10, 11,
12, 13,
14, 15,
16*   24:*9*

Correctional 17:3, 7, 8
Corrections 15:6, 9, 13 16:1, 3, 25
counsel
 5:2
 7:25
 8:13
 10:8
 33:9
couple
 17:1
 27:17
course
 16:2
COURT
 1:1
 7:9
 8:12
 10:17, 22 12:6, 13
courtroom
 13:16
creating
 7:9
criminal
 12:1
currently
 11:14
 16:11
 17:2
cut
 17:25
 18:2
 26:19

< D >

DATE
 2:6
 8:3
 14:8
 16:16
 18:9, 23
 19:6
 24:18, 23
 27:14
 28:3, 5
 35:1
DATED
 33:13
dates
 17:10
day
 18:24
 19:2, 21, 24
 33:13
 34:15
 35:1
days
 27:5, 13
declare
 35:1
deemed
 6:14
defendant
 8:19
 14:25
 30:1

Defendants
 1:17
 3:19
demeanor
 24:13

Department

15:5, 8, 12 16:25
Deponent
 35:1
deposed
 11:21, 23

DEPOSITION
 2:2
 6:10
 7:7, 15, 19, 21, 25 8:9, 25 9:11
 13:9, 22
 26:12
 31:6
 35:1
described
 24:1
DESCRIPTION 5:4

designated
 8:6
details
 30:2
device
 7:22
different
 11:4
direct
 11:11
 24:20
Directing
 18:9
disciplinary 13:11
dismissed
 13:7
 30:25

DISTRICT
 1:1, 2
 8:12
DOCCS
 15:24
 16:5
 17:6
document
 15:21
 25:19
documents
 11:18
 14:13
door
 20:24
 21:16
dorms
 17:1
dressed
 22:2
dropped
 27:1
duly
 34:4
duties
 18:18

< E >
earlier
 25:10
 26:1
Eastern
 8:4
 32:3
either
 22:13
 23:3
 24:18
 29:3
 30:13

electronic
 7:22
ELIZABETH
 3:15
 8:19
elizabeth.lombardi@ag.ny.gov
 3:17
email
 7:19
enforcement 15:9
entirety
 17:5
 24:6
entitled
 7:5
errors
 26:13
escort
 22:4
 23:18, 20
escorted
 19:7, 23
 20:1, 15, 23
 23:17
 24:16
escorting
 21:4
escorts
 20:12
ESQUIRE
 3:7, 15, 16
estimate
 29:16
ET 2:7, 8 8:10
 32:4

evaluation
21:*21*
22:*14*
23:*3*
Everhart
2:*10*
8:*5*
33:*3, 17*
everybody
23:*6*
exact
17:*10*
28:*5*
exactly
29:*11*
EXAMINATIO
N    4:*3*
10:*10*
excessive
29:*22*
excuse
13:*19*
EXHIBIT
5:*4*
25:*20, 23*
explain
26:*4*
explained
26:*3*

< F >
Facility
17:*3, 21*
fact
20:*11*
far
19:*14*
February
2:*6*
8:*3*
33:*13*

34:*5*
35:*1*
FEDERAL
6:*1, 11,*
*13, 15*
7:*1, 6*
feeding
18:*21*
filed
8:*11*
27:*19*
Finally
11:*9*
find
28:*14*
fine
26:*25*
finish
10:*19*
first
16:*9*
20:*15,*
*16*
31:*22*
34:*3*
floor
16:*15,*
*21*
18:*11, 18*
food
22:*3*
force
12:*24,*
*25*
15:*18*
17:*23*
18:*7*
29:*23*
30:*4, 11*
foregoing
33:*4*

34:*7*
35:*1*
form
6:*7*
25:*14, 15*
formatted
33:*7*
forth
33:*5*
found
25:*18*
frisk
25:*14, 15*
FROM/TO
35:*1*
front
11:*19*
20:*7*
full
33:*7*
FURTHER
6:*6, 9,*
*12*   9:*10*
31:*16*
33:*9*
34:*7*

< G >
GENERAL
3:*11*
8:*18, 20,*
*21*
General's
8:*22*
gestures
10:*23*
give
10:*3*
given
23:*16*
27:*10*
34:*9*

glitched
27:*1*
go
10:*14*
12:*6, 22*
15:*13*
30:*20*
going
10:*14*
11:*10*
25:*19*
29:*24*
30:*2, 15*
Good
8:*2*
10:*12*
32:*1*
governing
9:*3*
Greene
17:*7, 8*
grievance
27:*20*
ground
10:*15*
group
7:*18*

< H >
half
29:*12*
hand
9:*25*

handcuffed
20:*2, 3,*
*5, 6, 8,*
*11*   23:*12*
handcuffs
23:*13*
happen
21:*14*

happened
12:*13*
20:*16*
22:*1*
23:*15*
happy
11:*3*
head
10:*23*
health
21:*17,*
*18, 21*
22:*7, 13*
23:*3*
hear
10:*17*
17:*24*
26:*20*
heard
14:*13*
26:*21*
hearing
13:*9*
27:*10*
hearings
13:*12*
held
15:*9*
help
10:*18*
19:*12*
26:*7*
holding
20:*18*
hospital
27:*5, 8*
hour
29:*12*
HOWARD
1:*7*
8:*10*

< I >
identification
7:*12*
25:*23*

identified
7:*11, 18,*
*23*
identify
8:*13*
imagine
30:*9*
important
10:*15*

inaccurate
31:*13*
incarcerated
12:*16*
13:*12*
24:*10*
incident
12:*25*
13:*2*
16:*16*
18:*10,*
*23*   19:*7*
20:*4*
24:*18,*
*23*
25:*12*
26:*17*
27:*5, 14,*
*20*   28:*1,*
*4, 7, 11*
29:*13,*
*16, 20*
incidents
15:*21*

include
9:*5*
15:*18,*
*20*
17:*22*
18:*6*
indemnified   30:*22,*
*24*
independent   19:*19,*
*20*
20:*10,*
*23, 25*
21:*3*

individual
12:*16*
24:*10*
individuals   13:*12*
information   27:*11*
informed
23:*8*
injuries
21:*10,*
*11*   22:*19*
inmate
18:*20*
instruct
7:*16*
interaction   24:*20*
interactions   24:*17*

interested
33:*11*
interview
28:*20,*

22   29:*5,*
*7, 9, 20*
interviewed   27:*25*
29:*14, 17*

interviews
29:*19,*
*22*   30:*7*
31:*4*
investigation
30:*18*
31:*9*
investigations
29:*25*
30:*14*
31:*3*
investigator   28:*1*
involve
13:*3*
involved
13:*4*
it'd
12:*2*

< J >
jail
12:*5, 25*
13:*3*
JOB
2:*11*
15:*22*
JOHN
1:*16*
JONES
1:*15*
J-O-S-H
9:*21*

JOSHUA
2:*5*
4:*3*
8:*9, 19*
9:*21*
34:*13*
35:*1*
June
17:*9*

< K >
kicked
25:*3*
KING
1:*10*
knew
30:*12*
know
11:*3, 6,*
*25*   12:*2,*
*4*   13:*6*
14:*10,*
*21, 22,*
*23*
26:*16,*
*18*   27:*7,*
*10*
28:*12*
30:*13,*
*23*   31:*8,*
*11*

< L >
law   15:*9*
laws   9:*2*
lawsuit
12:*3*
15:*3*
31:*5*
Legal
8:*6*

LINE
35:*1*
little
14:*5*
located
11:*14*
LOCATION
2:*9*
locked
21:*16*
LOMBARDI
3:*15*
8:*18, 19*
9:*16*
12:*20*
17:*24*
26:*19,*
*22, 25*
29:*24*
30:*15*
31:*17, 24*
long
14:*11*
15:*5, 16*
29:*9, 11*

< M >
making
20:*9*
22:*21*
marked
25:*20, 23*
matter
8:*10*
9:*3*
12:*1, 5,*
*21*
matters
11:*22*
meaning
16:*6*

means
7:19
9:4, 7
medical
22:24
meet
28:23
meeting
29:3
memory
19:13
mental
21:17, 18, 21
22:7, 13
23:3
mentioned
14:13, 14
16:24
25:10
31:3
method
9:9
Mid-State
17:2, 5, 11
minute
26:20
minutes
14:12
month
17:20
months
15:17
17:7, 21
28:6, 10
MORAT
1:13
moving
10:21

< N >
name
8:5
9:20
10:12
30:12
named
14:24
30:11
nature
12:3, 18
necessary
7:10
15:21
need
11:2, 5
needed
16:9
needs
18:20
Neither
31:19
33:9
never
20:4
25:1, 3, 5, 7
NEW   1:2
3:6, 11, 14   8:7, 12, 20, 23
night
16:21
Nine
15:7
16:2
17:6
nods
10:22
normal
23:5

NORTHERN
1:2
8:12
Notary
34:19
35:1
noted
35:1
notes
26:24
noticing
8:15
Number
8:11

< O >
oath
7:8
9:11, 12
object
11:12
12:20
29:24
30:15

objections
6:7
11:10
obligations   18:19
October
16:17
18:10
OFFICE
3:11
8:20, 23
11:17
OFFICER
1:8, 9, 10, 11, 12, 13, 14, 15,

16   2:10
8:2, 6, 24   9:11, 17, 19, 23   10:7
16:1, 3, 8, 15, 21
18:11, 18
23:23
24:9
25:7
31:20
32:1
33:1, 19
officers
21:4
23:21
official
9:5
Oh   14:7
17:9
Okay
11:14
12:3, 15
13:25
14:24
15:2
16:2
17:2
19:23
20:9, 15
23:7, 25
24:22
25:10, 19
26:22
27:12, 19
28:10
29:4
31:8

once
11:24
20:24
ongoing
17:16, 22   18:5
opportunity   13:21
28:23
oppose
9:7
original
31:23
OSI
28:1, 14, 22
29:10, 14, 17
30:14, 18   31:2, 4, 9
outcome
30:13
33:11
outside
7:17

< P >
p.m   2:7, 8   8:4
32:3, 4
PAGE
4:3
5:4
35:1
part
7:15
15:21
participating   7:18

particular

16:6, 10, 18   30:18

**parties**
6:4, 13
7:4, 10
9:4, 10, 14   33:10

**party**
7:13
12:8

**pay**
31:23

**pen**
20:18

**penalties**
10:3
35:1

**pending**
11:8

**perform**
21:25

**performed**
21:21, 23
22:10, 18   23:8, 15

**performing**
23:4

**perjury**
10:3
35:1

**person**
7:20
9:11

**personnel**
9:9
13:3

**PETER**
1:4

8:17
10:14

**phone**
7:22
14:5, 6

**photo**
27:17

**photographs**   7:14
27:13

**photos**
27:16, 17

**physically**
24:23

**picture**
7:11

**piece**
25:11

**place**
28:20
30:7
33:5
34:9

**Plaintiff**
1:5
3:9
8:17
9:1
12:15

**platform**
2:9

**please**
8:13
9:20
10:18, 23   11:3, 5

**PLLC**
3:3
8:17

**point**
23:7, 25
24:22, 25

**position**
16:6

**positions**
15:10

**preparation**   26:12

**prepare**
13:21

**presence**
6:5

**present**
22:6, 9, 12   24:7
29:2, 6
30:11

**prior**
14:3
15:8
27:7
28:22
29:5

**procedural**
9:2

**Procedure**
6:11, 14, 16   7:7
20:12

**procedures**
23:5

**proceed**
10:8

**proceeding**
8:8   9:8

**PROCEEDINGS**   2:10
7:15

8:2, 24
9:17, 23
10:7
31:20
32:1, 4
33:1, 4, 6, 19

**process**
24:1, 6

**properly**
15:20

**property**
18:21

**provide**
31:23

**provided**
6:10, 13

**Public**
34:19
35:1

**punched**
25:1

**purposes**
6:10

**Pursuant**
7:6   9:2

**put**
20:17

**< Q >**

**question**
10:19, 24   11:1, 7, 8
12:23
18:1

**questions**
11:10
21:17
22:7
31:16, 18

**< R >**

**R.B**   1:7

**raise**
9:25

**rank**
15:25

**RASTANI**
1:8

**read**
7:23
13:23
14:21, 22, 24
19:12, 16   35:1

**reading**
19:10, 11, 17
26:24

**really**
14:1
28:8, 12

**reason**
13:18
35:1

**recall**
12:11
18:23, 25   19:1, 3, 9, 10, 11, 23, 25   20:1, 6, 20
21:6, 10
22:12, 15   23:2, 23
24:13, 15, 17, 19, 20
25:13

27:*9, 10,* *24* 28:*3, 5, 8, 21* 29:*9, 11* 30:*6, 8, 10* 31:*11*

**receive** 17:*13, 16* 18:*6*

**recognize** 25:*21*

**recollection** 19:*19, 20* 20:*10, 25* 21:*3*

**record** 7:*4, 10, 14, 25* 8:*3, 7, 14* 9:*5, 20* 10:*18, 22* 11:*18* 32:*3*

**recorded** 33:*6*

**recording** 9:*6*

**Referee** 6:*5*

**referral** 21:*18*

**referred** 7:*24*

**referring** 26:*1*

**refresh** 19:*13*

**regarding** 18:*6* 27:*20* 28:*1* 29:*20*

**related** 29:*22* 30:*18* 31:*5* 33:*10*

**remember** 12:*13* 14:*7, 8* 17:*10* 20:*4* 21:*7* 22:*19, 21, 24* 26:*3* 27:*18, 23* 28:*16, 18, 25* 29:*3*

**REMOTE** 2:*9* 7:*1, 8* 8:*6*

**remotely** 7:*9* 9:*1*

**repeat** 18:*1*

**rephrase** 11:*2*

**report** 25:*11* 26:*7, 9, 11*

**reporter** 7:*9* 10:*17, 22*

**reports** 15:*21* 26:*16*

**represent** 8:*14*

**representative** 28:*23* 29:*2, 5, 6*

**representing** 8:*19, 23*

**reserved** 6:*7*

**reside** 9:*13*

**resolved** 13:*6*

**resource** 16:*8*

**respect** 6:*16* 17:*13* 18:*5* 25:*12* 26:*17* 31:*9*

**respective** 6:*4*

**respond** 11:*12*

**response** 26:*20*

**responsibility** 13:*15*

**result** 31:*9*

**retained** 5:*2*

**review** 14:*19, 20* 26:*13*

**reviewed** 26:*11*

**RICKNER** 3:*3* 8:*17*

**right** 8:*25* 9:*17, 19, 25* 11:*15, 16* 26:*13* 31:*20*

**rights** 6:*13*

**room** 7:*20, 22* 22:*16*

**round** 24:*20*

**Rounds** 18:*20*

**Rule** 7:*6*

**Rules** 6:*11, 13, 15* 7:*6* 9:*2, 12* 10:*15* 22:*3* 23:*17*

**RUPP** 1:*4* 8:*10, 17* 10:*14* 19:*7, 18* 21:*1, 5, 11* 22:*7, 10, 19, 21* 23:*3,*

*8, 11, 12* *24:2, 7, 10, 16, 24* *25:8* *27:4, 7, 13, 19*

**Rupp's** 24:*13* 31:*10*

**< S >**

**SARA** 3:*7* 8:*16* 10:*12* 17:*24*

**sara@ricknerpllc.com** 3:*8*

**saw** 25:*7* 27:*18*

**saying** 23:*2*

**screen** 27:*1*

**search** 21:*23, 25* 22:*2, 10, 14, 18* 23:*4, 8, 11, 15, 16*

**sections** 6:*15*

**see** 21:*18* 26:*13*

**seeing** 21:*10* 22:*19*

seen
 24:*11*
 27:*16, 17*
sense
 11:*12*
separate
 29:*19*
Sergeant
 19:*5*
 21:*17,*
*20*   22:*6,*
*9*   23:*22*
 25:*8*
 28:*16*
series
 22:*7*
set
 16:*7*
 33:*5*
seven
 27:*13*
SGT   1:*7*
SHORT
 1:*7*
 19:*5*
 21:*20*
 22:*6, 9*
shortly
 28:*3*
show
 25:*19*
Showers
 18:*21*
SHU
 16:*14*
 18:*11,*
*14, 15*
 19:*21,*
*23*   20:*2,*
*16*   21:*1,*
*8*   24:*14*

signature
 35:*1*
signed
 25:*13*
six
 28:*10*
slapped
 25:*5*
slowly
 10:*16*
solemnly
 10:*2*
soon
 28:*19*
Sorry
 14:*18*
 18:*16*
 23:*11*
 26:*23*
 30:*7*
 31:*3*
sort
 15:*13*
 17:*13*
sorts
 20:*12*
South
 3:*12*
speak
 10:*16*
 14:*6*
 28:*15,*
*24*   30:*17*
special
 17:*13*
specific
 16:*24*
 20:*4*
 30:*2*
Specifical
ly

 18:*16*
 30:*24*
specifics
 12:*23*
 30:*21*
specified
 34:*9*
spell
 9:*20*
spoke
 14:*11*
 29:*4*
 31:*5*
spoken
 15:*3*
 27:*25*
stamp
 25:*20*
stand
 13:*16*
START
 2:*7*
 21:*19*
started
 15:*12,*
*24*   16:*5,*
*9*
starting
 8:*15*
STATE
 3:*11, 12*
 8:*14, 20,*
*23*   9:*20*
 11:*17*
Statement
 5:*5*
 20:*9*
 25:*11,*
*25*   26:*5*

statements
 21:*4*

22:*22*
26:*17*
STATES
 1:*1*
 8:*11*
stenograph
ic   9:*6*
stipulate
 9:*14*

STIPULATED
 6:*3, 6,*
*9, 12*
 7:*3*
STIPULATIO
NS   6:*1*
 7:*1*
Street
 3:*4, 12*
strip
 20:*18*
 21:*19*
 23:*11*
 25:*14, 15*
Suite
 3:*5, 13*
 8:*6*
summarize
 18:*19*

supervisor
 19:*1*
supervisor
s   28:*17*
sure
 10:*23*
 20:*3*
 27:*24*
swear
 10:*1, 2*

sworn
 34:*4, 15*
 35:*1*

< T >
T3   26:*4*
take
 8:*7*
 23:*14*
 28:*20*
taken
 8:*10*
 9:*1*
 20:*23*
 21:*13*
 23:*13*
 27:*4, 8,*
*13*   33:*4*
talk
 10:*16*
tasks
 16:*7*
tell
 13:*15,*
*19*   22:*3*
telling
 14:*2, 9*
testified
 13:*8, 11*
testify
 34:*4*
testimony
 9:*8, 9*
 10:*3*
 31:*13*
 34:*5, 9*
text
 7:*19*
Thank
 8:*24*
 9:*18, 23*
 10:*7, 9*

31:*21*
32:*2*
**thereof**
33:*11*
**thereto**
6:*16*
**thing**
11:*6*
20:*16*
**things**
25:*8*
**think**
14:*7*
31:*13*
**thought**
27:*1*
**three**
17:*20*
**till**
17:*9*
**TIME**
2:*7, 8*
6:*8*
8:*4*
11:*1, 5*
19:*6, 9,*
14, *21*
32:*3*
33:*5*
34:*9*
**times**
11:*23*
29:*17*
**today**
13:*19*
14:*4*
27:*7*
31:*13*
**Today's**
8:*3*
13:*22*
26:*12*

**To-from**
5:*5*
13:*23*
14:*14*
19:*17*
25:*10,*
25   26:*16*
**told**
28:*17,*
*19*   31:*5*
**training**
15:*13*
17:*13,*
*16, 17*
18:*6*
**trainings**
15:*18,*
*20*
17:*18,*
*21, 22,*
*23*   18:*5*

**transcript**
33:*8*
34:*8*
**transferre**
**d**   21:*7*
**trial**
6:*8*
13:*9*
**true**
33:*7*
34:*8*
35:*1*
**truly**
28:*13*
**truth**
10:*4, 5*
13:*15,*
*19*   34:*4*
**Two**
15:*17*

16:*23*
17:*7*
27:*5*
29:*18, 19*
**typical**
20:*12*


< U >
**U-A**   9:*22*
**unable**
13:*19*

**understand**
11:*1*
13:*14*
**union**
28:*23,*
*24*   29:*2,*
*4, 6*
**UNITED**
1:*1*
8:*11*
**unrelated**
11:*22*
12:*21*
29:*25*
30:*16*
**use**
12:*24,*
*25*
15:*18*
17:*23*
18:*7*
30:*11*
**uses**
30:*3*
**Utica**
11:*17*
**Utica-Ro**
8:*22*
**utilized**

6:*10*


< V >
**VELASCO**
3:*16*
8:*21, 22*
31:*19*
**verbally**
10:*24*
**versus**
8:*10*
**video**
7:*14*
**videoconfe**
**rence**
2:*9*    7:*8*

**VIDEOTAPED**
2:*2*
**visible**
21:*10*
22:*19*


< W >
**wait**
10:*18, 20*
**waived**
6:*5, 14*
**walked**
20:*20*
**Wall**   3:*4*
**want**
31:*23*
**wanted**
26:*14*
28:*14, 19*
**way**
11:*4*
33:*11*
**Webex**
2:*9*

**Wednesday**
2:*6*
35:*1*
**week**
14:*7, 8*
**well**
10:*21*
18:*3*
26:*12*
**went**
17:*10*
**we've**
20:*4*
**withdrawn**
31:*3*
**WITNESS**
2:*5*
7:*11, 13,*
*16, 21,*
*23, 24*
12:*24*
30:*3, 22*
**WOLKENSDOR**
**FER**    3:*7*
4:*4*
8:*16*
9:*15*
10:*9, 11,*
*13*    13:*1*
18:*2, 4*
25:*24*
26:*21,*
*23*    27:*3*
30:*5*
31:*1, 22,*
*25*
**words**
26:*9*
**work**
11:*15*
17:*2, 8*

| | | | | |
|---|---|---|---|---|
| **worked**<br> 15:*5*<br> 17:*5*<br>**working**<br> 15:*8, 12*<br> 16:*25*<br> 18:*11, 24*<br>**works**<br> 22:*4*<br>**wreck**<br> 18:*22*<br> 22:*4*<br>**write**<br> 26:*7*<br>**writing**<br> 25:*11*<br>**written**<br> 7:*10*<br>**wrote**<br> 25:*12*<br><br>**< Y >**<br>**Yeah**<br> 18:*2, 20*<br>**year**<br> 12:*11*<br>**years**<br> 12:*14*<br> 15:*7*<br> 16:*3*<br> 17:*6*<br>**YORK**<br> 1:*2*<br> 3:*6, 11,*<br>*14*   8:*7,*<br>*12, 20, 23*<br>**YVETTE**<br> 3:*16*<br> 8:*22*<br>**yvette.vel**<br>**asco@ag.ny** | **.gov**<br> 3:*18*<br><br>**< Z >**<br>**Zoom**<br> 13:*15* | | | |